# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>     Debtor. | No. 19-34054-sgj11 |
| NEXPOINT ADVISORS, L.P.,<br><br>     Appellant,<br><br>v.<br><br>MARC S. KIRSCHNER,  TRUSTEE OF THE LITIGATION SUB-TRUST,<br><br>     Appellee. | Civ. Act. No. 3:22-cv-00335-L<br><br>*Appeal from the United States Bankruptcy Court for the Northern District of Texas* |

## APPELLANT'S APPENDIX

Davor Rukavina
Tex. Bar No. 24030781
Julian P. Vasek
Tex. Bar No. 24070790
MUNSCH HARDT KOPF & HARR P.C.
500 N. Akard St., Ste. 3800
Dallas, TX 75201
214-855-7500
drukavina@munsch.com
jvasek@munsch.com

**COUNSEL FOR APPELLANT**
**NEXPOINT ADVISORS, L.P.**

Appellant NexPoint Advisors, L.P. hereby files this *Appellant's Appendix* pursuant to Fed. R. Bankr. P. 8018.

| <u>Tab</u> | <u>Description</u> | <u>Record Number</u> |
|------|-----|-----|
| 1 | Relevant Docket Entries | 8-13, 428, 453, 455 |
| 2 | Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186) | 660-718 |
| 3 | Transfer of Claim Other Than for Security | 719 |
| 4 | NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186) | 720-722 |
| 5 | The Litigation Trustee's Reply to NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186) | 723-730 |
| 6 | Email Correspondence between Parties and Court | 743-746 |
| 7 | Order Sustaining Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186) | 6-7 |
| 8 | Notice of Appeal | 1-5 |

RESPECTFULLY SUBMITTED this 14th day of April, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

/s/  *Julian P. Vasek*

Davor Rukavina
Tex. Bar No. 24030781
Julian P. Vasek
Tex. Bar No. 24070790
500 N. Akard St., Ste. 3800
Dallas, TX 75201
214-855-7528
drukavina@munsch.com
jvasek@munsch.com

**COUNSEL FOR APPELLANT
NEXPOINT ADVISORS, L.P.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on April 14, 2022, a true and correct copy of the foregoing document (and exhibits) was served on the following recipients via the Court's CM/ECF system:

Case Admin Sup    txnb_appeals@txnb.uscourts.gov

Davor Rukavina    drukavina@munsch.com

Julian Preston Vasek    jvasek@munsch.com

Juliana Lorraine Hoffman    jhoffman@sidley.com, crognes@sidley.com, txefilingnotice@sidley.com

Paige Holden Montgomery    pmontgomery@sidley.com, broper@sidley.com, txefilingnotice@sidley.com

Stacey G Jernigan    sgj_settings@txnb.uscourts.gov, anna_saucier@txnb.uscourts.gov

/s/ *Julian P. Vasek*

Julian P. Vasek

# Tab 1

**U.S. Bankruptcy Court**
**Northern District of Texas (Dallas)**
**Bankruptcy Petition #: 19−34054−sgj11**

| | |
|---|---|
| *Assigned to:* Stacey G. Jernigan | *Date filed:* 10/16/2019 |
| Chapter 11 | *Date Plan Confirmed:* 02/22/2021 |
| Voluntary | *Date transferred:* 12/04/2019 |
| Asset | *Plan confirmed:* 02/22/2021 |
| <u>Show Previous Cases</u> | *341 meeting:* 01/09/2020 |
| | *Deadline for filing claims:* 04/08/2020 |
| | *Deadline for filing claims (govt.):* 04/13/2020 |

*Debtor*
**Highland Capital Management, L.P.**
100 Crescent Court
Suite 1850
Dallas, TX 75201
DALLAS−TX

represented by **Zachery Z. Annable**
Hayward PLLC
10501 N. Central Expressway
Suite 106
Dallas, TX 75231
(972) 755−7108
Fax : (972) 755−7108
Email: <u>zannable@haywardfirm.com</u>

**Kenneth H. Brown**
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111−4500
415−263−7000
Fax : 415−263−7010
Email: <u>sdhibbard@JonesDay.com</u>

**David Grant Crooks**
Fox Rothschild LLP
5420 LBJ Freeway, Suite 1200
Dallas, TX 75240
(972) 991−0889
Fax : (972) 404−0516
Email: <u>dcrooks@foxrothschild.com</u>

**Gregory V. Demo**
Pachulski Stang Ziehl & Jones L.L.P.
780 Third Avenue
New York, NY 10017−2024
(212) 561−7700
Fax : (212) 561−7777
Email: <u>gdemo@pszjlaw.com</u>

**Jeffrey M. Dine**
Pachulski Stang Ziehl & Jones LLP
780 Third Avenue
34th Floor
New York, NY 10017
212−561−7735
Fax : 212−561−7777

**Robert Joel Feinstein**

000008

Pachulski Stang Ziehl & Jones LLP
780 Third Avenue, 34th Floor
New York, NY 10017−2024
(212) 561−7700
Fax : (212) 561−7777
Email: rfeinstein@pszjlaw.com

**Eric Thomas Haitz**
Gibson, Dunn & Crutcher LLP
811 Main Street, Suite 3000
Houston, TX 77002
346−718−6648
Email: ehaitz@gibsondunn.com
*TERMINATED: 12/09/2019*

**Melissa S. Hayward**
Hayward PLLC
10501 N. Central Expry, Ste. 106
Dallas, TX 75231
972−755−7104
Fax : 972−755−7104
Email: MHayward@HaywardFirm.com

**Hayward & Associates PLLC**
10501 N. Central Expwy., Ste 106
Dallas, TX 75231

**Juliana Hoffman**
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 969−3581
Fax : (214) 981−3400
Email: jhoffman@sidley.com

**Ira D Kharasch**
10100 Santa Monica Boulevard
13th Floor
Los Angeles, CA 90067
310−227−6910
Fax : 310−201−0760
Email: ikharasch@pszjlaw.com

**Alan J. Kornfeld**
Pachulski Stang Ziehl & Jones LLPL
10100 Santa Monica Blvd., 13 Fl
Los Angeles, CA 90067
310−277−6910
Fax : 301−201−0760

**Jordan A. Kroop**
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue
34th Floor
New York, NY 10017−2024
212−561−7700
Fax : 212−561−7777
Email: jkroop@pszjlaw.com

**Maxim B Litvak**
Pachulski Stang Ziehl & Jones LLP
150 California Street

15th Floor
San Francisco, CA 94111
415−263−7000
Email: mlitvak@pszjlaw.com

**John A. Morris**
Pachulski Stang Ziehl & Jones, LLP
780 Third Avenue, 34th Floor
New York, NY 10017−2024
(212) 561−7700
Fax : (212) 561−7777
Email: jmorris@pszjlaw.com

**James E. O'Neill**
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Fl.
Wilmington, DE 19801
302−652−4100
Fax : 302−652−4400
Email: joneill@pszjlaw.com

**Jeffrey N. Pomerantz**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
310−277−6910
Fax : 310−201−0760
Email: jpomerantz@pszjlaw.com

**Jeffrey Nathan Pomerantz**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067
(310) 277−6910
Fax : (310) 201−0760
Email: jpomerantz@pszjlaw.com

**Elissa A. Wagner**
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067−4003
310−277−6910
Fax : 310−201−0760

**Hayley R. Winograd**
Pachulski Stang Ziehl & Jones LLP
780 3rd Avenue #36
New York, NY 10017
(212) 561−7700
Fax : (212) 561−7777
Email: hwinograd@pszjlaw.com

*U.S. Trustee*
**United States Trustee**
1100 Commerce Street
Room 976
Dallas, TX 75202
214−767−8967

represented by **Lisa L. Lambert**
Office of the United States Trustee
1100 Commerce St., Rm. 976
Dallas, TX 75242
(214) 767−8967 ext 1080
Fax : (214) 767−8971
Email: lisa.l.lambert@usdoj.gov

*Creditor Committee*
**Official Committee of Unsecured Creditors**

represented by **Sean M. Beach**
YOUNG CONAWAY STARGATT &

000010

TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
302−571−6600
Email: bankfilings@ycst.com

**Jessica Boelter**
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
212−839−5300
Fax : 212−839−5599
Email: jboelter@sidley.com

**Matthew A. Clemente**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853−7539
Email: mclemente@sidley.com

**David Grant Crooks**
(See above for address)

**Gregory V. Demo**
(See above for address)

**Bojan Guzina**
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
312−853−7323
Fax : 312−853−7036
Email: bguzina@sidley.com

**Bojan Guzina**
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
3128537323
Email: bguzina@sidley.com

**Juliana Hoffman**
(See above for address)

**Paige Holden Montgomery**
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981−3300
Fax : (214) 981−3400
Email: pmontgomery@sidley.com

**Edmon L. Morton**
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
1000 North King Street
Wilmington, DE 19801
302−571−6637
Fax : 302−571−1253
Email: emorton@ycst.com

**Michael R. Nestor**
YOUNG CONAWAY STARGATT &
TAYLOR, LL
Rodney Square
1000 North King Street
Wilmington, DE 19801
302−571−6600
Email: mnestor@ycst.com

**Charles Martin Persons, Jr.**
Sidley Austin LLP
2020 McKinney Avenue, Suite 2000
Dallas, TX 75210
(214) 981−3300
Fax : (214) 981−3400
Email: cpersons@sidley.com

**Jeffrey N. Pomerantz**
(See above for address)

**Penny Packard Reid**
Sidley Austin LLP
2021 McKinney Avenue, Suite 2000
Dallas, TX 75201
(214) 981−3413
Fax : (214) 981−3400
Email: preid@sidley.com

**Alyssa Russell**
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
(312) 853−7422
Fax : (312) 853−7036
Email: alyssa.russell@sidley.com

**Dennis M. Twomey**
Sidley Austin, LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853−7438
Fax : (312) 853−7036
Email: dtwomey@sidley.com

**Jaclyn C. Weissgerber**
YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
302−571−6600
Email: bankfilings@ycst.com

**Sean M. Young Conway Stargatt &
Taylor, LLP**
Young Conway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
302−571−6600
Email: sbeach@ycst.com

| Filing Date | Docket Text |
|---|---|
| 12/04/2019 | <u>1</u> Order transferring case number 19−12239 from U.S. Bankruptcy Court for the District of Delaware Filed by Highland Capital Management, L.P. (Okafor, M.) |
| 12/04/2019 | <u>2</u> DOCKET SHEET filed in 19−12239 in the U.S. Bankruptcy Court for Delaware . (Okafor, M.) |
| 12/04/2019 | <u>3</u> Chapter 11 Voluntary Petition . Fee Amount $1717. Filed by Highland Capital Management, L.P.. (Attachments: # <u>1</u> Creditor Matrix) [ORIGINALLY FILED AS DOCUMENT #1 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | <u>4</u> Motion to Pay Employee Wages /Motion of the Debtors for Entry of Order (I) Authorizing the Debtor to (A) Pay and Honor Prepetition Compensation, Reimbursable Business Expenses, and Employee Benefit Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief Filed by Debtor Highland Capital Management, L.P. (Attachments: # <u>1</u> Exhibit A − Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #2 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | <u>5</u> Motion to Pay Critical Trade Vendor Claims /Motion of the Debtor for Entry of Interim and Final Orders (A) Authorizing Debtor to Pay Prepetition Claims of Critical Vendors and (B) Granting Related Relief Filed By Highland Capital Management, L.P. (Attachments: # <u>1</u> Exhibit A − Proposed Order)(O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #3 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] |
| 12/04/2019 | <u>6</u> Motion to Extend Deadline to File Schedules or Provide Required Information Filed by Highland Capital Management, L.P.(Attachments: # <u>1</u> Exhibit A − Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #4 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE](Okafor, M.) |
| 12/04/2019 | <u>7</u> Motion to Maintain Bank Accounts /Motion of the Debtor for Interim and Final Orders Authorizing (A) Continuance of Existing Cash Management System and Brokerage Relationships, (B) Continued Use of the Prime Account, (C) Limited Waiver of Section 345(b) Deposit and Investment Requirements, and (D) Granting Related Relief Filed By Highland Capital Management, L.P. (Attachments: # <u>1</u> Exhibit A − Interim Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #5 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | <u>8</u> **WITHDRAWN** − 10/29/2019. SEE DOCKET # 72. Motion to Approve Use of Cash Collateral /Motion of Debtor for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Authorizing the Liquidation of Securities, (D) Modifying the Automatic Stay, and (E) Scheduling a Final Hearing Filed By Highland Capital Management, L.P. (Attachments: # <u>1</u> Exhibit A − Order)(O'Neill, James) Modified on 10/30/2019 (DMC)[ORIGINALLY FILED AS DOCUMENT #6 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] |
| 12/04/2019 | <u>9</u> Application to Appoint Claims/Noticing Agent KURTZMAN CARSON CONSULTANTS, LLC Filed By Highland Capital Management, L.P. (Attachments: # <u>1</u> Exhibit A − Engagement Agreement # <u>2</u> Exhibit B − Gershbein Declaration # <u>3</u> Exhibit C − Proposed Order) (O'Neill, James) [ORIGINALLY FILED AS DOCUMENT #7 ON 10/16/2019 IN U.S. BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE] (Okafor, M.) |
| 12/04/2019 | |

| | |
|---|---|
| 11/09/2021 | <u>3000</u> Objection to claim(s) of Creditor(s) Jean−Paul Sevilla.. Filed by Interested Party Litigation Trustee of the Highland Capital Management, L.P. Litigation Sub−Trust. Responses due by 12/9/2021. (Attachments: # <u>1</u> Exhibit A # <u>2</u> Exhibit B) (Montgomery, Paige) |
| 11/09/2021 | <u>3001</u> Omnibus Objection to claim(s) of Creditor(s) Jean−Paul Sevilla, Scott Ellington, Isaac Leventon, Frank Waterhouse, CLO Holdco, Ltd... Filed by Interested Party Litigation Trustee of the Highland Capital Management, L.P. Litigation Sub−Trust. Responses due by 12/9/2021. (Attachments: # <u>1</u> Exhibit A) (Montgomery, Paige) |
| 11/09/2021 | <u>3002</u> Objection to claim(s) of Creditor(s) Hunter Covitz.. Filed by Interested Party Litigation Trustee of the Highland Capital Management, L.P. Litigation Sub−Trust. Responses due by 12/9/2021. (Attachments: # <u>1</u> Exhibit A # <u>2</u> Exhibit B # <u>3</u> Exhibit C # <u>4</u> Exhibit D # <u>5</u> Exhibit E) (Montgomery, Paige) |
| 11/10/2021 | <u>3003</u> Certificate of No Objection filed by Debtor Highland Capital Management, L.P. (RE: related document(s)<u>2939</u> Motion for leave *(Amended Motion of the Reorganized Debtor for an Order Authorizing Entry into an Amended and Restated Employee Stipulation)* (related document(s) <u>2856</u> Motion for leave)). (Annable, Zachery) |
| 11/10/2021 | <u>3004</u> Chapter 11 Post−Confirmation Report for the Quarter Ending: 09/30/2021 filed by Debtor Highland Capital Management, L.P.. (Attachments: # <u>1</u> Global Notes to Post−Confirmation Report) (Annable, Zachery) |
| 11/10/2021 | <u>3005</u> Chapter 11 Post−Confirmation Report for the Quarter Ending: 09/30/2021 filed by Other Professional Highland Claimant Trust. (Attachments: # <u>1</u> Global Notes to Post−Confirmation Report) (Annable, Zachery) |
| 11/10/2021 | <u>3006</u> Motion to extend time to Remove Actions Pursuant to 28 U.S.C. 1452 and Rule 9027 of the Federal Rules of Bankruptcy Procedure (RE: related document(s)<u>2828</u> Order on motion to extend/shorten time) Filed by Debtor Highland Capital Management, L.P. Objections due by 12/1/2021. (Annable, Zachery) |
| 11/10/2021 | <u>3007</u> Order approving stipulation and agreed order authorizing withdrawal of proof of claim 113 filed by The Dugaboy Investment Trust as Successor−in−Interest to The Canis Major Trust (RE: related document(s)<u>2990</u> Withdrawal of claim filed by Debtor Highland Capital Management, L.P.). Entered on 11/10/2021 (Okafor, Marcey) |
| 11/10/2021 | <u>3008</u> Order Approving Stipulation and Agreed Order Authorizing Withdrawal of Proof of Claim 120 Filed by The Get Good Trust(RE: related document(s)<u>2991</u> Withdrawal of claim filed by Debtor Highland Capital Management, L.P.). Entered on 11/10/2021 (Okafor, Marcey) |
| 11/10/2021 | <u>3009</u> Order Approving Stipulation and Agreed Order Authorizing Withdrawal of Proof of Claim 128 Filed by The Get Good Non−Exempt Trust No. 1 Individually and as Successor−in−Interest to The Canis Major Trust (RE: related document(s)<u>2992</u> Withdrawal of claim filed by Debtor Highland Capital Management, L.P.). Entered on 11/10/2021 (Okafor, Marcey) |
| 11/10/2021 | <u>3010</u> Order Approving Stipulation and Agreed Order Authorizing Withdrawal of Proof of Claim 129 Filed by The Get Good Non−Exempt Trust No. 2 Individually and as Successor−in−Interest to The Canis Major Trust (RE: related document(s)<u>2993</u> Withdrawal of claim filed by Debtor Highland Capital Management, L.P.). Entered on 11/10/2021 (Okafor, Marcey) |
| 11/10/2021 | <u>3011</u> INCORRECT ENTRY: Filed in AP at docket #69. Motion to stay pending appeal *Amended* (related documents <u>1943</u> Order confirming chapter 11 plan) Filed by Creditor CLO Holdco, Ltd., Interested Parties CLO Holdco, Ltd., Charitable DAF Fund, LP |

000428

| 12/30/2021 | 3141 Order granting 2889 motion to strike document. (re: document 2852 Application for compensation) Entered on 12/30/2021. (Okafor, Marcey) |
|---|---|
| 12/30/2021 | 3142 Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s)2940 Amended Motion to disallow claims *(Amended Motion of the Reorganized Debtor to Disallow Claim of Frank Waterhouse Pursuant to Bankruptcy Code Section 502)* (related document(s):2857) Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Exhibit A)). Hearing to be held on 2/28/2022 at 01:30 PM at https://us−courts.webex.com/meet/jerniga for 2940, (Annable, Zachery) |
| 12/31/2021 | 3143 Certificate of service re: Notice of Hearing on Amended Motion of the Reorganized Debtor to Disallow Claim of Frank Waterhouse Pursuant to Bankruptcy Code Section 502 Filed by Claims Agent Kurtzman Carson Consultants LLC (related document(s)3142 Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s)2940 Amended Motion to disallow claims *(Amended Motion of the Reorganized Debtor to Disallow Claim of Frank Waterhouse Pursuant to Bankruptcy Code Section 502)* (related document(s):2857) Filed by Debtor Highland Capital Management, L.P. (Attachments: # 1 Exhibit A)). Hearing to be held on 2/28/2022 at 01:30 PM at https://us−courts.webex.com/meet/jerniga for 2940, filed by Debtor Highland Capital Management, L.P.). (Kass, Albert) |
| 01/01/2022 | 3144 BNC certificate of mailing − PDF document. (RE: related document(s)3141 Order granting 2889 motion to strike document. (re: document 2852 Application for compensation) Entered on 12/30/2021.) No. of Notices: 1. Notice Date 01/01/2022. (Admin.) |
| 01/03/2022 | 3145 Motion to extend time to object to claims Filed by Debtor Highland Capital Management, L.P. (Annable, Zachery) |
| 01/03/2022 | 3146 Assignment/Transfer of Claim. Fee Amount $26. Transfer Agreement 3001 (e) 2 Transferors: Hunter Covitz (Claim No. 186) To NexPoint Advisors, L.P.. Filed by Interested Party NexPoint Advisors, L.P.. (Vasek, Julian) |
| 01/03/2022 | 3147 Response opposed to (related document(s): 3002 Objection to claim filed by Interested Party Litigation Trustee of the Highland Capital Management, L.P. Litigation Sub−Trust) filed by Interested Party NexPoint Advisors, L.P.. (Vasek, Julian) Filed by Interested Party NexPoint Advisors, L.P. (related document(s)3002 Objection to claim(s) of Creditor(s) Hunter Covitz.. Filed by Interested Party Litigation Trustee of the Highland Capital Management, L.P. Litigation Sub−Trust. Responses due by 12/9/2021. (Attachments: # 1 Exhibit A # 2 Exhibit B # 3 Exhibit C # 4 Exhibit D # 5 Exhibit E) filed by Interested Party Litigation Trustee of the Highland Capital Management, L.P. Litigation Sub−Trust). (Vasek, Julian) |
| 01/03/2022 | Receipt of filing fee for Assignment/Transfer of claim (Claims Agent)( 19−34054−sgj11) [claims,trclmagt] ( 26.00). Receipt number A29228864, amount $ 26.00 (re: Doc# 3146). (U.S. Treasury) |
| 01/03/2022 | 3148 Notice of hearing filed by Debtor Highland Capital Management, L.P. (RE: related document(s)3145 Motion to extend time to object to claims Filed by Debtor Highland Capital Management, L.P.). Hearing to be held on 1/27/2022 at 02:30 PM at https://us−courts.webex.com/meet/jerniga for 3145, (Annable, Zachery) |
| 01/03/2022 | 3149 Appellee designation of contents for inclusion in record on appeal *Supplemental Designation of Record on Appeal* filed by Creditor Sidley Austin LLP (RE: related document(s)3076 Notice of appeal, 3077 Notice of appeal, 3078 Notice of appeal, 3079 Notice of appeal, 3080 Notice of appeal, 3095 Notice regarding the record for a bankruptcy appeal, 3096 Notice of docketing notice of appeal/record, 3099 Notice regarding the record for a bankruptcy appeal, 3100 Notice of docketing notice of appeal/record, 3103 Notice regarding the record for a bankruptcy appeal, 3104 Notice of docketing notice of |

| | |
|---|---|
| | Debtor Highland Capital Management, L.P., 3149 Appellee designation of contents for inclusion in record of appeal *Supplemental Designation of Record on Appeal* filed by Creditor Sidley Austin LLP (RE: related document(s)3076 Notice of appeal, 3077 Notice of appeal, 3078 Notice of appeal, 3079 Notice of appeal, 3080 Notice of appeal, 3095 Notice regarding the record for a bankruptcy appeal, 3096 Notice of docketing notice of appeal/record, 3099 Notice regarding the record for a bankruptcy appeal, 3100 Notice of docketing notice of appeal/record, 3103 Notice regarding the record for a bankruptcy appeal, 3104 Notice of docketing notice of appeal/record, 3108 Notice regarding the record for a bankruptcy appeal, 3109 Notice of docketing notice of appeal/record, 3117 Notice regarding the record for a bankruptcy appeal, 3118 Notice of docketing notice of appeal/record). filed by Creditor Sidley Austin LLP, 3150 Appellee designation of contents for inclusion in record of appeal *Supplemental Designation of Record on Appeal* filed by Financial Advisor FTI Consulting, Inc. (RE: related document(s)3076 Notice of appeal). filed by Financial Advisor FTI Consulting, Inc., 3151 Appellee designation of contents for inclusion in record of appeal *Suplemental Designation of Record* filed by Other Professional Teneo Capital, LLC (RE: related document(s)3078 Notice of appeal). filed by Other Professional Teneo Capital, LLC, 3153 Appellee designation of contents for inclusion in record of appeal filed by Attorney Pachulski Stang Ziehl & Jones LLP (RE: related document(s)3077 Notice of appeal). filed by Attorney Pachulski Stang Ziehl & Jones LLP, 3154 Appellee designation of contents for inclusion in record of appeal filed by Other Professional Wilmer Cutler Pickering Hale and Dorr LLP (RE: related document(s)3078 Notice of appeal). filed by Other Professional Wilmer Cutler Pickering Hale and Dorr LLP). (Kass, Albert) |
| 01/06/2022 | 3162 Certificate of service re: Highland's Notice of Rule 30(b)(6) Deposition to CPCM, LLC Filed by Claims Agent Kurtzman Carson Consultants LLC (related document(s)3156 Notice to take deposition of CPCM, LLC filed by Debtor Highland Capital Management, L.P.. filed by Debtor Highland Capital Management, L.P.). (Kass, Albert) |
| 01/07/2022 | 3163 Order authorizing withdrawal of proofs of claim nos. 135, 137 and 139 (RE: related document(s)3152 Withdrawal of claim filed by Interested Party Mark Okada). Entered on 1/7/2022 (Bradden, T.) |
| 01/07/2022 | 3164 Order approving stipulation and agreed order authorizing withdrawal of proofs of claim nos. 182, 184, 185, 187, 192, 214, 215, 242, 245 and 253 (RE: related document(s)3091 Stipulation filed by Interested Party Litigation Trustee of the Highland Capital Management, L.P. Litigation Sub−Trust). Entered on 1/7/2022 (Bradden, T.) |
| 01/07/2022 | 3165 Order granting motion to appear pro hac vice adding Jeffrey M. Dine for Highland Capital Management, L.P. (related document # 3159) Entered on 1/7/2022. (Bradden, T.) |
| 01/07/2022 | 3166 Order Approving Stipulation and Agreed Order Authorizing Withdrawal of Claims Transferred to Nexpoint Advisors, L.P. (RE: related document(s)3160 Stipulation filed by Debtor Highland Capital Management, L.P.). Entered on 1/7/2022 (Dugan, Sue) |
| 01/07/2022 | 3167 Reply to (related document(s): 3147 Response to objection to claim filed by Interested Party NexPoint Advisors, L.P.) filed by Interested Party Litigation Trustee of the Highland Capital Management, L.P. Litigation Sub−Trust. (Montgomery, Paige) |
| 01/07/2022 | 3168 Certificate of service re: Highland's Amended Notice of Deposition to Frank Waterhouse Filed by Claims Agent Kurtzman Carson Consultants LLC (related document(s)3158 Notice to take deposition of Frank Waterhouse filed by Debtor Highland Capital Management, L.P.. filed by Debtor Highland Capital Management, L.P.). (Kass, Albert) |
| 01/08/2022 | 3169 Subpoena on Frank Waterhouse filed by Debtor Highland Capital Management, L.P.. (Annable, Zachery) |
| 01/09/2022 | |

000455

Tab 2

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Susheel Kirpalani (admitted *pro hac vice*)
Deborah J. Newman (admitted *pro hac vice*)
Robert Loigman (admitted *pro hac vice*)
Benjamin I. Finestone (admitted *pro hac vice*)
Jordan Harap (admitted *pro hac vice*)
Alexandre J. Tschumi (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

**SIDLEY AUSTIN LLP**
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Co-counsel for Marc S. Kirschner, as Litigation*
*Trustee of the Highland Litigation Sub-Trust*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, | ) | Case No. 19-34054-sgj11 |
| L.P., [1] | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**LITIGATION TRUSTEE'S OBJECTION TO PROOF OF CLAIM**
**FILED BY HUNTER COVITZ (CLAIM NO. 186)**

Pursuant to sections 502(b), 502(d), and 502(e) of Title 11 of the United States Code (the

"Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and Rule 3007-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court

for the Northern District of Texas (the "Local Rules"), Marc S. Kirschner (the "Litigation

Trustee"), as Litigation Trustee of the Litigation Sub-Trust (the "Trust") established pursuant to

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357). The Reorganized Debtor is a Delaware limited partnership. The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

000660

the Fifth Amended Plan of Reorganization (the "<u>Plan</u>") of Highland Capital Management L.P. ("<u>HCMLP</u>" or the "<u>Reorganized Debtor</u>") [Docket No. 1808], through his undersigned counsel, hereby files this objection (the "<u>Objection</u>') to Proof of Claim No. 186, filed by Hunter Covitz on May 26, 2020 (the "<u>Claim</u>"). The Litigation Trustee requests that the Claim be summarily disallowed and respectfully represents as follows.

## I.    JURISDICTION

1.    The Court has jurisdiction over this matter under the Bankruptcy Code and pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are 11 U.S.C. § 502(b)-(e), Bankruptcy Rule 3007, and Local Rule 3007-1.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    General Background

3.    On October 16, 2019 (the "<u>Petition Date</u>"), HCMLP filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court of the District of Delaware, Case No. 19-12239 (CSS).

4.    On December 4, 2019, the Delaware Court entered an order transferring venue of HCMLP's bankruptcy case to this Court [Docket No. 186].

5.     On March 2, 2020, the Court entered its *Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 488] (the "<u>Bar Date Order</u>"). The Bar Date Order fixed April 8, 2020 at 5:00 p.m. (prevailing Central Time) as the deadline for any person or entity, other than Governmental Units (as such term is defined in section 101(27) of the Bankruptcy Code), to file proofs of claim against the Debtor (the "<u>General Bar Date</u>"). HCMLP also sought and obtained the extended employee bar date of May 26, 2020

2

per the *Order Granting Debtor's Emergency Motion and Extending Bar Date Deadline for Employees to File Claims* [Docket No. 560].

6.      On March 3, 2020, HCMLP filed the *Notice of Bar Dates for Filing Claims* [Docket No. 498] (the "Bar Date Notice"). The Bar Date Notice was mailed to all known creditors and equity holders on March 5, 2020. See Certificate of Service [Docket No. 530].

7.      On May 8, 2020, this Court entered the *Order Approving Joint Stipulation of the Debtor and the Official Committee of Unsecured Creditors Modifying Bar Date Order* [Docket No. 628] (the "Employee Bar Date Order").  Pursuant to the Employee Bar Date Order, HCMLP was authorized to provide certain employees with a letter (the "Employee Letter") setting forth the prepetition deferred, contingent bonuses awarded to such employees under the Bonus Programs (as defined below).  For confidentiality reasons, HCMLP provided the Employee Letters in lieu of requiring such employees to file a proof of claim publicly that disclosed his or her compensation, and the amounts included in the Employee Letters were deemed to constitute prima facie evidence of the validity and amount of such covered employees' claims under Bankruptcy Rule 3003(c).  If a covered employee disagreed with the amounts included in his or her Employee Letter, such employee was required to file a proof of claim no later than 5:00 p.m. Central Time on May 26, 2020.

8.      On February 22, 2021, this Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Docket No. 1943] (the "Confirmation Order"), which confirmed the Plan.

9.      On March 18, 2021, HCMLP filed the *Debtor's Third Omnibus Objection to Certain No Liability Claims* [Docket No 2059] (the "Omnibus Objection"), requesting the

disallowance of certain former employees' claims related to annual performance bonuses and deferred performance awards on various grounds.

## B. The Claim

10.     Covitz is a former employee of HCMLP who was terminated in March 2021. On May 26, 2020, Covitz filed the Claim against HCMLP, which seeks "not less than [$]250,000" in connection with (1) "compensation for his services"—including salaries, wages, benefits, bonuses, vacation, paid time off, retirement contributions, pensions, and deferred compensation; (2) reimbursement for "travel and other business-related expenses incurred in connection with performing any services to which the Claimant is entitled"; and (3) indemnification "for all acts performed or omitted to be performed on behalf of or in connection with the Debtor's business." (Claim ¶¶ 3-5).

## III.     RELIEF REQUESTED

11.     The Litigation Trustee files this Objection pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007, seeking entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Proposed Order"), disallowing and expunging the Claim.

## IV.     OBJECTIONS

12.     Pursuant to the Plan, the Claimant Trust Agreement, the Litigation Sub-Trust Agreement, and the Assignment Agreement—executed between the Highland Claimant Trust[2] and the Litigation Sub-Trust and effective as of August 11, 2021—the Litigation Trustee has standing to object to the Claim.

---

[2] The terms "Claimant Trust Agreement," "Litigation Sub-Trust Agreement," and "Highland Claimant Trust" shall have the meaning ascribed to them as set forth in the Plan.

000663

13.     A filed proof of claim is "deemed allowed, unless a party in interest … objects." 11 U.S.C. § 502(a).

14.     As set forth in Bankruptcy Rule 3001(f), a properly executed and filed proof of claim constitutes prima facie evidence of the validity and amount of the claim under section 502(a) of the Bankruptcy Code.  *See In re Fidelity Holding Co.,* 837 F.2d 696, 698 (5th Cir. 1988).  To receive the benefit of prima facie validity, however, "[i]t is elemental that a proof of claim must assert facts or allegations . . . which would entitle the claimant to a recovery." *In re Heritage Org., L.L.C.*, 04-35574 (BJH), 2006 WL 6508477, at *8 (Bankr. N.D. Tex. Jan. 27, 2006), *aff'd sub nom., Wilferth v. Faulkner*, 3:06 CV 510 K, 2006 WL 2913456 (N.D. Tex. Oct 11, 2006).   If evidence rebutting the claim is presented in an objection, then the claimant must produce additional evidence to support the claim.  *In re Fidelity,* 837 F.2d at 698.  Indeed, "[t]he ultimate burden of proof always lies with the claimant." *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006).

15.     Section 502(b)(1) of the Bankruptcy Code requires disallowance of a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law[.]" 11 U.S.C. § 502(b)(1).  For the reasons contained herein, the Claim is unenforceable against HCMLP and should be disallowed, expunged, or reduced.

16.     The Claim should be disallowed and expunged because it is vague and does not provide sufficient information or accompanying documentation in order to determine its amount or validity.  To the extent Covitz contends that he has not attached documentation supporting his Claim because they "are in the possession of [HCMLP]" (*see* Claim ¶ 9), that is incorrect, and no liability for the Claim appears on HCMLP's books and records.

17.     To the extent the Claim seeks payment for "bonuses," those claims should be disallowed for the reasons set forth in the HCMLP's Omnibus Objection, which is incorporated

5

000664

herein by reference. [Docket No. 2059 at 7-12]. As set forth in that Omnibus Objection: (1) all amounts due and owing under HCMLP's Annual Bonus Plan[3] granted in February 2019 were paid in the ordinary course, and no amounts related thereto are outstanding; (2) the Annual Bonus Plan was terminated on January 14, 2021, and, as a result, employees were no longer entitled to receive deferred, contingent awards issued in any other year under the previously operative Annual Bonus Plan; (3) under HCMLP's Deferred Bonus Plan, the 2017 Award, 2018 Award, and 2019 Award do not vest, and therefore are not due and payable, unless the employee is employed by HCMLP on the applicable vesting date, which Covitz is not; and (4) the 2017 Award was paid in the ordinary course during 2020, and no amounts related thereto are outstanding.[4] *Id.* Consequently, the Claim should be disallowed and expunged to the extent Covitz seeks payment of any bonuses or similar awards.

18.    To the extent the Claim seeks payment for severance, that too should be disallowed under the Employment Agreement entered into between HCMLP and Covitz, dated January 1, 2007 (the "Covitz Employment Agreement").[5] Pursuant to section 4.4 of the Covitz Employment Agreement: (i) HCMLP may terminate Covitz "at any time without Cause for any reason whatsoever"; and (ii) Covitz "acknowledge[d] that [HCMLP's] obligation to pay severance, if any, will arise … only if [Covitz] signs and returns a duly executed separation agreement and release"

---

[3] Capitalized terms in Section IV not otherwise defined shall have the meaning ascribed to them in the Omnibus Objection [Docket No. 2059].

[4] The Annual Bonus Plan is attached hereto as **Exhibit B.** The Deferred Bonus Plan is attached hereto as **Exhibit C.**

[5] The Covitz Employment Agreement is attached hereto as **Exhibit D.**

000665

in the form attached as an exhibit to the Covitz Employment Agreement. Covitz did not sign a separation and release agreement, and therefore is not entitled to any severance pay.[6]

19.    Covitz's indemnification-related claims should also be disallowed for additional reasons. *First*, Covitz has not incurred any indemnifiable costs to date. *Second*, Covitz's allegation that he is entitled to "indemnification, including, without limitation, for all acts performed or omitted to be performed on behalf of or in connection with the Debtor's business" (Claim ¶ 5) fails under the plain text of the operative agreements. Covitz alleges that his right to indemnification is based on the Fourth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P. (the "Previous LPA") and the Resolution of the Board of Directors of Strand Advisor, Inc., dated May 12, 2020 (the "May Resolution"). (Claim ¶ 8). These assertions are incorrect. As of the effective date of the Plan, the rights of current and former employees are governed by the Fifth Amended and Restated Partnership Agreement, which: (1) does not afford Covitz any right to indemnification; and (2) expressly disclaims any prior indemnification claims.[7]

20.    Finally, section 502(e)(1)(B) of the Bankruptcy Code provides that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor … to the extent that … such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance[.]" Once again, although Covitz fails to plead his indemnification claim

---

[6] It appears that at the time Covitz's Employment Agreement was entered into in 2007, he erroneously signed the separation agreement and release attached to the Employment Agreement as an exhibit. However, at the time of Covitz's termination in 2021, he did not execute a separation agreement.

[7] The Fifth Amended and Restated Partnership Agreement is attached hereto as **Exhibit E**. Moreover, even if the Previous LPA and May Resolution governed, HCMLP would not owe Covitz indemnification obligations for conduct constituting gross negligence or willful or wanton misconduct. Although Covitz does not provide any detail about the conduct or circumstances that may give rise to his purported indemnification claim, it should be disallowed to the extent that it is premised on Covitz's negligent, willful, or wanton misconduct.

000666

with specificity, it should be disallowed to the extent that it arises out of conduct undertaken with or on behalf of HCMLP. *See In re Falcon V, L.L.C.*, 620 B.R. 256, 270 (Bankr. M.D. La 2020) (disallowing contingent claim for indemnification under section 502(e)(1)(B) and observing that "[c]ourts have consistently held that 'the concept of reimbursement includes indemnity'").

21.     Accordingly, Covitz has failed to carry his burden with respect to these claims, and the Litigation Trustee requests that these claims be disallowed and expunged.

## V.      RESPONSES TO OBJECTION

22.     To contest an objection, a claimant must file and serve a written response to this Objection (each, a "Response") so that it is received no later than December 9, 2021 (the "Response Deadline").  Every Response must be filed with the Office of the Clerk of the United States Bankruptcy Court for the Northern District of Texas (Dallas Division), Earle Cabell Federal Building, 1100 Commerce Street, Room 1254, Dallas, TX 75242-1496 and served upon the following entities, so that the Response is received no later than the Response Deadline, at the following addresses:

> **QUINN EMANUEL URQUHART & SULLIVAN LLP**
> Susheel Kirpalani
> Deborah J. Newman
> Robert Loigman
> Benjamin I. Finestone
> Jordan Harap
> Alexandre J. Tschumi
> 51 Madison Ave., 22nd Floor
> New York, NY 10010
> susheelkirpalani@quinnemanuel.com
> deborahnewman@quinnemanuel.com
> robertloigman@quinnemanuel.com
> jordanharap@quinnemanuel.com
> alexandretschumi@quinnemanuel.com
>
> -and-
>
> **SIDLEY AUSTIN LLP**

000667

> Paige Holden Montgomery
> Juliana Hoffman
> 2021 McKinney Avenue
> Suite 2000
> Dallas, Texas 75201
> pmontgomery@sidley.com
> jhoffman@sidley.com

23.     Every Response to this Objection must contain, at a minimum, the following information:

> a.     A caption setting forth the name of the Court, the name of the Debtor, the case number, and the title of the objection to which the Response is directed;
>
> b.     The name of the claimant, his/her/its claim number, and a description of the basis for the amount of the claim;
>
> c.     The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;
>
> d.     Any supporting documentation (to the extent it was not included with the proof of claim previously filed with the clerk of the Court or KCC) upon which the party will rely to support the basis for and amounts asserted in the proof of claim; and
>
> e.     The name, address, telephone number, email address, and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtor should communicate with respect to the claim or the Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

24.     If the claimant fails to file and serve a timely Response by the Response Deadline, the Litigation Trustee will present to the Court an appropriate order disallowing the claimant's claim, as set forth in **Exhibit A**, without further notice to the claimant.

## VI.     **RESERVATION OF RIGHTS**

25.     The Litigation Trustee reserves its right to supplement or modify this Objection and to assert such further objections, defenses, or arguments as may later become available or apparent.

000668

### VII.    **NOTICE**

26.    Notice of this Objection shall be provided to (i) the Office of the United States Trustee for the Northern District of Texas; (ii) each of the claimants whose claim is subject to this Objection; (iii) the Reorganized Debtor; and (iv) all entities requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Litigation Trustee submits that no further notice is required.

WHEREFORE, the Litigation Trustee respectfully requests the entry of the proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested and granting such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Blank]*

000669

Dated: November 9, 2021
    Dallas, Texas

Respectfully submitted,

SIDLEY AUSTIN LLP
 /s/ *Paige Holden Montgomery*
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

-and-

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Susheel Kirpalani (admitted *pro hac vice*)
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
Benjamin I. Finestone (admitted *pro hac vice*)
Jordan Harap (admitted *pro hac vice*)
Alexander J. Tschumi (admitted *pro hac vice*)
51 Madison Avenue
Floor 22
New York, NY 10010
Telephone:  (212) 849-7000

*Counsel for the Litigation Trustee*

000670

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, that on this 9th day of November 2021, the undersigned caused to be served a true and correct copy of the *Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)*, by electronically filing it with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ *Paige Holden Montgomery*
Paige Holden Montgomery

000671

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**ORDER SUSTAINING THE LITIGATION TRUSTEE'S OBJECTION TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)**

Having considered *The Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* (the "Objection"), Proof of Claim No. 186, filed by Hunter Covitz on May 26, 2020 (the "Claim"), any responses to the Objection, and the arguments of counsel, the Court

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357). The Reorganized Debtor is a Delaware limited partnership. The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

finds that (i) notice of the Objection was good and sufficient upon the particular circumstances and that no other or further notice need be given; (ii) the Objection is a core proceeding under 28 U.S.C. §§ 157(b)(2); (iii) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and (iv) Covitz was properly and timely served with the Objection and the notice of hearing on the Objection. Accordingly, the Court finds and concludes that there is good and sufficient cause to grant the relief set forth in this Order. It is therefore **ORDERED:**

1.    The Objection is **SUSTAINED** as set forth in further detail herein.

2.    The Claim is **DISALLOWED** with prejudice and expunged in its entirety.

3.    To the extent applicable, the official claims register in the Debtor's chapter 11 case shall be modified in accordance with this Order.

4.    The Litigation Trustee's[2] rights to amend, modify, or supplement the Objection, to file additional objections to the Claim and any other claims (filed or not, including any other claims filed by holder of the Claim) which may be asserted against the Reorganized Debtor, and to seek further reduction of any claim to the extent such claim has been paid, are preserved. Additionally, should one or more of the grounds in the Objection be overruled, the Litigation Trustee's right to object on other stated grounds or any other ground that the Litigation Trustee may discover are further preserved.

5.    The Litigation Trustee is authorized and empowered to take any actions necessary to implement and effectuate the terms of this Order.

6.    The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

<center>###END OF ORDER###</center>

---

[2] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Objection.

# EXHIBIT B

000675

HCM#301-v2-2005_HCMLP_Bonus_Plan.pdf
ORIGINAL

**2005 HCMLP BONUS PLAN**

1.  Purpose of the Plan . This bonus plan shall be known as the 2005 HCMLP Bonus Plan. The purpose of the Plan (as defined below) is to attract and retain the highest quality employees for positions of substantial responsibility, and to provide additional incentives to the employees of Highland Capital Management, L.P. (the "Partnership") and its Affiliates so as to promote the success of the Partnership and its Affiliates. The Plan is intended to be an unfunded bonus pay arrangement providing incentive compensation to such employees, exempt from the provisions of the Employee Retirement Income Security Act of 1974, as amended.

    The Plan is intended to be in good faith compliance with Section 409A of the Code, and is to be construed in accordance with Section 409A of the Code and any guidance issued thereunder. This Plan does not relate to and shall not apply to any bonus plans previously offered by the Partnership or its Affiliates (the "Predecessor Plans"). This Plan is not intended as a "material modification" of any Predecessor Plans as such term is described in any guidance issued under Section 409A of the Code. The Predecessor Plans in effect December 31, 2004, shall be subject to the applicable laws in effect prior to the enactment of Section 409A of the Code, to the extent Section 409A of the Code is inapplicable to such Predecessor Plans.

2.  Definitions. As used herein, the following definitions shall apply:

    (a)  "Account" shall mean individual recordkeeping accounts which shall be unfunded and maintained for each Participant solely for the purpose of recording Awards made under the Plan.

    (b)  "Administrator" shall mean the General Partner, or the person or persons appointed by the General Partner to administer the Plan and Awards granted under the Plan.

    (c)  "Affiliate" shall mean any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question. As used in this definition, the term "control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise.

    (d)  "Award" shall mean a Bonus made available to a Participant in accordance with Sections 8 and 9 below.

    (e)  "Award Date" shall mean the effective date of the Participant's Award Letter Agreement.

    (f)  "Award Letter Agreement" shall mean a written agreement evidencing the granting of an Award under the Plan.

    (g)  "Bonus" shall mean an amount of compensation determined from time to time by the General Partner in its sole and unfettered discretion and that is made available to a Participant in accordance with Sections 8 and 9 below. A Bonus

CONFIDENTIAL-PEO
CONFIDENTIAL
Highland/PEO-010396
000676
D-NE-001609

Case 19-34054-sgj11 Doc 3002-2 Filed 11/09/21 Entered 11/09/21 18:20:56 Page 3 of 9
HCML #301-v2-2005 - HCML P Bonus Plan.pdf
Case 3:22-cv-00035-LDDocument 6-2 Filed 03/15/22 Page 33 of 103 PageID 4173

shall be accrued and earned by a Participant only to the extent when the Participant becomes entitled to receive a distribution in accordance with Sections 8 and 9 below.

(h)  "Code" shall mean the Internal Revenue Code of 1986, as amended.

(i)  "Disability" shall mean disability as defined by the terms of the Partnership's or its Affiliate's applicable long-term disability plan as in effect at the determination of such Disability but will not include disabilities related to fatigue or stress. If, at any time, the Partnership or the Affiliate that employs the Participant, does not maintain a long-term disability plan, Disability shall mean a physical or mental condition which, in the judgment of the Partnership or the Affiliate, permanently prevents the Participant from performing the essential functions of his/her position with the Partnership or the Affiliate, with or without reasonable accommodation, or such other position or job that the Partnership or the Affiliate makes available to him/her that is of similar status, similar compensation and similar responsibility and for which the Participant is qualified by reason of his/her education, training and experience. In making its determination, the Partnership and its Affiliates may, but are not required to, rely on advice of a physician competent in the area to which such Disability relates. The Partnership and its Affiliates may make the determination in their sole discretion, and any decision of the Partnership and its Affiliates will be binding on all parties.

The foregoing notwithstanding, in the event it is determined that the definition of Disability as described above results in a violation of Section 409A of the Code, and as a result an Award would be subject to the taxes described in Section 409A(a)(1) of the Code, with respect to such Award any determination of Disability shall be made in accordance with the requirements of Section 409A of the Code and any guidance issued thereunder and Disability shall mean the Participant is (i) unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months, or (ii) by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months, receiving income replacement benefits for a period of not less than three (3) months under an accident and health plan covering Employees of the Partnership and its Affiliates.

(j)  "Employee" shall mean any employee of the Partnership or its Affiliates.

(k)  "Eligibility" shall mean satisfaction of such requirements and conditions as set forth in the Award Letter Agreement, and shall include the requirement that the Participant have and continue to maintain active full-time employment with the Partnership or its Affiliates on each payment date as specified in Section 8.

(l)  "General Partner" shall mean Strand Advisors, Inc., the General Partner of Highland Capital Management, L.P.

d-1315555.8                                  2

Case 19-34054-sgj11 Doc 3002-2 Filed 11/09/21 Entered 11/09/21 18:20:56 Page 4 of 9
HCML#301-v2-2005_HCMLP_Bonus_Plan.pdf
Case 3:22-cv-00355-LDD Document 5-2 Filed 04/15/22 Page 34 of 103 PageID 1274

(m) "Participant" shall mean any Employee who receives an Award under the Plan, as evidenced by an Award Letter Agreement entered into between such Employee and the Partnership.

(n) "Partnership" shall mean Highland Capital Management, L.P., a Delaware limited partnership.

(o) "Person" shall mean an individual or a corporation, limited liability company, partnership, trust, estate, unincorporated organization, association, or other entity.

(p) "Plan" shall mean the 2005 HCMLP Bonus Plan, as hereinafter amended from time-to-time.

(q) "Plan Year" shall mean the calendar year. The initial Plan Year commences January 1, 2005 and ends December 31, 2005.

3. <u>Administration of the Plan</u>. The Plan shall be administered by the Administrator.

(a) <u>Powers of the Administrator</u>. The Administrator shall have all powers necessary or appropriate to accomplish its duties under this Plan including, but not limited to, the power and duty to:

(i) maintain complete and accurate records of all Plan transactions and other data in the manner necessary for proper administration of the Plan;

(ii) adopt, amend, or waive rules of procedure and regulations necessary for the proper and efficient administration of the Plan, provided the rules and regulations are not inconsistent with the terms of the Plan as set out herein. All rules and decisions of the Administrator shall be uniformly and consistently applied to all Participants in similar circumstances;

(iii) construe, interpret and enforce the terms of the Plan and any agreement or instrument entered into under the Plan and the rules and regulations it adopts;

(iv) amend the terms of the Plan or any outstanding Award Letter Agreement, to the extent the amendment of any such term is within the discretion of the Administrator as provided in the Section 12 of the Plan or any Award Letter Agreement.

(v) review claims and render decisions on claims for benefits under the Plan;

(vi) furnish the Partnership or the Participants, upon request, with information that the Partnership or the Participants may require for tax or other purposes;

d-1315555 8

3

CONFIDENTIAL-PEO
CONFIDENTIAL

Highland/PEO-010398
000678
D-NE-001611

Case 19-34054-sgj11 Doc 3002-2 Filed 11/09/21 Entered 11/09/21 18:20:56 Page 5 of 9
HCMLP#301-v2-2005_HCMLP_Bonus_Plan.pdf
Case 3:22-cv-00035-LDD Document 6-2 Filed 04/15/22 Page 35 of 103 PageID 1275

     (vii)    employ agents, attorneys, accountants or other Persons and delegate its authority to any Person, as permitted by law (and any such Person may be employed by or represent the Partnership or its Affiliates), for such purposes as the Administrator considers necessary or desirable in connection with its duties hereunder; and

     (viii)   perform any and all other acts for the proper management and administration of the Plan.

(b)    <u>Decisions Binding</u>. All determinations and decisions of the Administrator as to any disputed question arising under the Plan, including questions of construction and interpretation, shall be made by the Administrator in its sole and unfettered discretion, and shall not be subject to review by anyone, but shall be final, binding, and conclusive upon all parties.

(c)    <u>Indemnification</u>. Each Person who is or has shared the title of an Administrator, including one of the Persons appointed by the General Partner to administer the Plan and Awards granted under the Plan and Persons described in Section 3(a)(vii) above, shall be indemnified and held harmless by the Partnership and its Affiliates against and from any loss, cost, liability, or expense that may be imposed upon or reasonably incurred by him or her in connection with or resulting from any claim, action, suit, or proceeding to which he or she may be a party, or in which he or she may be involved by reason of any action taken or failure to act under the Plan, and against and from any and all amounts paid by him or her in settlement thereof, with the Partnership's approval, or paid by him or her in satisfaction of any judgment in any such action, suit, or proceeding against him or her, provided he or she shall give the Partnership and its Affiliates an opportunity, at their own expense, to handle and defend the same before he or she undertakes to handle and defend it on his or her own behalf.

The foregoing right of indemnification shall not be exclusive of any other rights of indemnification to which such Persons may be entitled under the Partnership's limited partnership agreement, as a matter of law, or otherwise, or any power that the Partnership may have to indemnify them or hold them harmless.

4.    <u>Eligibility and Participation</u>. Participation in the Plan shall be determined on an annual basis by the General Partner, in its sole and unfettered discretion. The General Partner may, but shall not be obligated to, select Employees who are eligible to participate in this Plan at anytime, and from time to time. Participants shall be notified of their participation in the Plan in writing and shall be apprised of the terms of the Plan and any Award provided under the Plan. Except as otherwise provided in an Award Letter Agreement and in Section 9 below, participation in the Plan and eligibility to receive a distribution requires that a Participant have and continue to maintain an active full-time employment relationship with the Partnership or its Affiliates.

5.    <u>Establishment of Awards</u>. The General Partner shall, in its sole and unfettered discretion, determine the amount of an Award that is granted under Section 4 above. The amount of Awards may vary on a Plan Year-by-Plan Year and/or a Participant-by-Participant basis. The determination of the amount of an Award shall be set forth in the corresponding Award Letter Agreement and shall be final and binding on all parties.

CONFIDENTIAL-PEO
CONFIDENTIAL

Highland/PEO-010399
000679
D-NE-001612

Case 19-34054-sgj11 Doc 3002-2 Filed 11/09/21 Entered 11/09/21 18:20:56 Page 6 of 9
HCMLP-301-v2-2005 - HCMLP - Bonus Plan.pdf
Case 3:22-cv-00354-LD Document 6-2 Filed 03/14/22 Page 36 of 103 PageID 1476

6.   **No Participation or Award Rights**.  No Employee shall at any time have a right to participate in the Plan for any Plan Year, despite having previously participated in the Plan.  All Awards granted under the Plan are of a voluntary nature.  The grant of an Award or the benefit of participating in the Plan shall not create a claim for future Awards, benefits or participation in the Plan, even if Awards or benefits have been granted to a Participant repeatedly over previous Plan Years.

7.   **Accounting of Awards**.  The amount of a Participant's Award for a Plan Year shall be reflected in the Participant's Account.  The Participant's Account shall be adjusted as amounts are paid to the Participant in accordance with the distribution provisions set forth in Section 8 below.

8.   **Distribution of Awards**.  Depending upon the terms in the applicable Award Letter Agreement, a Participant's Bonus for a Plan Year shall be accrued and earned by the Participant only as such Award is payable under this Section 8 or under Section 9 below.  Except as provided in Section 9 below, a Participant's Award for a Plan Year shall be payable in cash (or by check) in accordance with the terms in the applicable Award Letter Agreement in one (1), two (2), three (3) or four (4) equal installments on the following dates provided the Participant has an active full-time employment relationship with the Partnership or its Affiliated on such dates:

    (a)   the last business day in February in the Plan Year that follows the Award Date;

    (b)   if the Award Letter Agreement provides that the Award is payable in two (2) or more installments, the last business day in August in the Plan Year that follows the Plan Year of the Award Date;

    (c)   if the Award Letter Agreement provides that the Award is payable in three (3) or more installments, the last business day in February in the Plan Year that follows the Plan Year of the Award Date; and

    (d)   if the Award Letter Agreement provides that the Award is payable in four (4) installments, the last business day in August in the second Plan Year that follows the Plan Year of the Award Date.

For example, if a Participant remains eligible to receive all payments from an Award granted in the 2005 Plan Year, and the applicable Award Letter Agreement provides for payment in four (4) equal installments, the payments shall be made as follows: the first payment shall be made on the last Friday in February 2006; the second payment shall be made on the last Friday in August 2006; the third payment shall be made on the last Friday in February 2007; and the fourth payment shall be made on the last Friday in August 2007.

9.   **Termination of Employment**.

    (a)   Except as otherwise provided in this Plan, in the event that a Participant's employment with the Partnership and all Affiliates of the Partnership is terminated for any reason other than for death or Disability, the terminated individual shall cease to be a Participant in the Plan and shall not be eligible to

d-1315555 8                                                          5

CONFIDENTIAL-PEO
CONFIDENTIAL
Highland/PEO-010400
000680
D-NE-001613

receive any undistributed amounts previously credited to the terminated individual's Account. Such undistributed amounts previously credited to such terminated individual's Account shall be forfeited and the terminated individual shall have no interest in, or right to receive, any portion of such forfeited amount. Amounts which are forfeited shall not be allocated among the remaining Participants.

(b)     In the event that a Participant's employment with the Partnership and all Affiliates of the Partnership is terminated due to death or Disability: (i) the terminated individual shall cease to be a Participant in the Plan; (ii) all undistributed amounts previously credited to the terminated individual's Account shall be accrued and earned; and (iii) within seventy-five (75) days of the Participant's termination of employment, all undistributed amounts previously credited to the Participant's Account shall be distributed to the Participant or the Participant's estate, as applicable.

10.   <u>Nontransferability</u>. No right or interest of any Participant in the Plan shall be assignable or transferable, or subject to any lien directly, by operation of law, or otherwise, including but not limited to, execution, levy, garnishment, attachment, pledge, and bankruptcy.

11.   <u>Rights of Participants</u>. Nothing in the Plan shall be construed as giving any Participant the right to be retained in the employ of the Partnership or its Affiliates or any right to any payment whatsoever. Except as otherwise provided for herein, the Partnership and its Affiliates expressly reserve the right to dismiss any Participant at any time and for any reason without liability for the effect which such dismissal might have upon him as a Participant in the Plan.

12.   <u>Amendment or Termination of the Plan</u>. The General Partner, in its sole and unfettered discretion, may amend, suspend or discontinue the Plan or Award Letter Agreement. No amendment, suspension or discontinuance shall impair the rights of any Participant except to the extent necessary to comply with any provision of federal or applicable state laws, including Section 409A of the Code and any guidance issued thereunder, or except to the extent necessary to prevent detriment to the Partnership and its Affiliates. The foregoing notwithstanding, in the event it is determined that any provision in this Plan results in a violation of the requirements of Section 409A of the Code and any guidance issued thereunder, the Administrator shall have the power to unilaterally modify or eliminate any such provision.

13.   <u>Partnership Changes</u>.

(a)     <u>Dissolution or Liquidation</u>.   Notwithstanding any provision herein to the contrary, upon the dissolution or liquidation of the Partnership, all undistributed amounts previously credited to a Participant's Account shall be forfeited.

(b)     <u>Successors</u>. All obligations of the Partnership under the Plan shall be binding upon and inure to the benefit of any successor to the Partnership, whether the existence of such successor is the result of a direct or indirect purchase, merger, consolidation, or otherwise, of all or substantially all of the business and/or assets of the Partnership.

d-1315555.8                                          6

Highland/PEO-010401

000681

D-NE-001614

14. <u>Miscellaneous</u>

    (a)    <u>Governing Law and Proper Venue</u>. The Plan, and all provisions hereunder, shall be governed by and construed in accordance with the laws of the state of Texas without giving effect to principles of conflict of laws. The proper place of venue to enforce any terms or conditions of this Plan shall be Dallas County, Texas. Furthermore, any legal proceeding against the Partnership arising out of or in connection with this Plan shall be brought in the district courts of Dallas County, Texas, or the United States District Court for the Northern District of Texas, Dallas Division.

    (b)    <u>Withholding Taxes</u>. The Partnership and its Affiliates, if applicable, shall have the right to deduct from all payments under the Plan any foreign, federal, state, local, or other taxes required by applicable law to be withheld with respect to such payments.

    (c)    <u>Gender and Number</u>. Except where otherwise indicated by the context, any masculine term used herein also shall include the feminine, the plural shall include the singular, and the singular shall include the plural.

    (d)    <u>Severability</u>. In the event that any provision of the Plan shall be declared or adjudicated illegal, invalid or unenforceable for any reason whatsoever, then the illegal, invalid or unenforceable provision shall be deemed excised herefrom, and the remaining parts of the Plan shall continue and remain in full force and effect and the Plan shall be construed and enforced as if such illegal, invalid or unenforceable provision had not been included herein.

    (e)    <u>Costs of the Plan</u>. All costs of implementing and administering the Plan shall be borne by the Partnership.

    (f)    <u>No Plan Funding</u>. The Plan shall at all times be entirely unfunded and no provision shall at any time be made with respect to segregating assets of the Partnership or its Affiliates for payment of any amounts hereunder. No Participant, beneficiary, or other person shall have any interest in any particular assets of the Partnership or its Affiliates by reason of the right to receive a benefit under the Plan. Participants and beneficiaries shall have only the rights of a general unsecured creditor of the Participant's employer.

    (g)    <u>FMLA and Other Leave</u>. For United States Employees, this Plan shall be administered to comply with the Family and Medical Leave Act of 1993, as amended ("FMLA"). Any Employee who takes leave that satisfies the requirements of the FMLA shall, for purposes of this Plan, be considered actively working with the Partnership or its Affiliates, as applicable, during such FMLA leave; provided, however, that nothing herein shall be construed to credit such Employee with working full time if such Employee was not otherwise actually working full time prior to such FMLA leave. The foregoing notwithstanding, the Plan shall be administered to comply with the minimum requirements of any other applicable law relating to leave of absence.

d-1315555.8

7

Highland/PEO-010402

000682

D-NE-001615

Case 19-34054-sgj11 Doc 3002-2 Filed 11/09/21 Entered 11/09/21 18:20:56 Page 9 of 9
HCM #301 v2 2005 - HCM LP Bonus Plan.pdf
Case 3:22-cv-00355-L Document 5-2 Filed 03/15/22 Page 39 of 103 PageID 179

(h)  <u>Previous Compensation Arrangements</u>. Except as otherwise provided in the Award Letter Agreement, all compensation arrangements provided to a Participant by the Partnership and its Affiliates prior to the date on which the Employee becomes a Participant shall be null and void once the Employee becomes a Participant.

As evidence of its adoption of the Plan, Highland Capital Management, L.P. has caused this instrument to be signed by its officer of representative duly authorized on this _1ST_ day of _January_, 2005.

Highland Capital Management, L.P.
By: Its General Partner, Strand Advisors, Inc.

By: _____

Title: _President_____

CONFIDENTIAL-PEO                                         Highland/PEO-010403
CONFIDENTIAL                                                        D-NE-001616
000683

Case 3:22-cv-00355-L Document 5-2   Filed 04/15/22   Page 40 of 103 PageID 4280

# EXHIBIT C

000684

## HIGHLAND CAPITAL MANAGEMENT, L.P.
## DEFERRED INCENTIVE PLAN

**Section 1.    Definitions**.  For purposes of the Plan, the following terms are defined as set forth below:

(a)    "Administrator" means the President of the Company.

(b)    "Affiliate" means a Person, including a joint venture entity, that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the Person specified.  An entity will be deemed an Affiliate of the Company for purposes of this definition only for such periods as the requisite ownership or control relationship is maintained.

(c)    "Award" means any type of award granted under the Plan, which may be granted as (1) a cash award, (2) an award that is denominated or payable in, valued in whole or in part by reference to, or otherwise based on, or related to, Shares, or (3) any combination of the foregoing.  Unless an Award Agreement provides otherwise or the Participant agrees to defer settlement, all Awards will be settled within 5 business days of vesting (or the lapse of restrictions).  Upon settlement of any Award by delivery of the underlying Shares or cash, such underlying Shares or cash will no longer be "Awards" subject to the Plan or any Award Agreement.

(d)    "Award Agreement" means any written agreement, contract or other instrument or document evidencing an Award.

(e)    "Change in Capitalization" means any (1) merger, amalgamation, consolidation, reclassification, recapitalization, spin-off, spin-out, repurchase or other reorganization or corporate transaction or event, (2) special dividend (whether in the form of cash, shares of common stock or other property), share split or reverse share split or other distribution, (3) combination or exchange of Shares, or (4) other change in corporate structure, which, in any such case of (1) through (4), the Administrator determines, in his reasonable discretion in good faith, materially affects Shares such that an adjustment pursuant to Section 4 hereof is appropriate.

(f)    "Code" means the Internal Revenue Code of 1986, as amended from time to time, or any successor thereto.

(g)    "Company" means Highland Capital Management, L.P., a Delaware limited partnership.

(h)    "Disability" means, with respect to any Participant, that such Participant (i) as determined by the Administrator in his reasonable discretion in good faith, is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than 12 months, or (ii) is, by reason of any medically determinable physical or mental impairment that can be expected to result in death or can be expected to last

DLI-266521681v5

CONFIDENTIAL

D-NE-001617

for a continuous period of not less than 12 months, receiving in the case of this clause (ii) income replacement benefits for a period of not less than three months under an accident and health plan covering employees of the Company or an Affiliate thereof.

(i) "Exchange Act" means the Securities Exchange Act of 1934, as amended from time to time.

(j) "Fair Market Value" as of a particular date means the fair market value as reasonably determined in good faith by the Administrator in his reasonable discretion in good faith; provided, however, that if determining the fair market value of Shares or any other securities that are admitted to trading on a securities exchange, the fair market value of such Shares or other securities on any date will be the closing sale price reported for such shares on such exchange on such date or, if no sale was reported on such date, on the last day preceding such date on which a sale was reported.

(k) "Participant" means an employee, member, partner or manager of the Company or any Affiliate of the Company who has been selected by the Administrator, pursuant to the Administrator's authority provided for in Section 2 below, to receive grants of Awards, and, upon his or her Disability or death, his or her successors, heirs, executors and administrators, as the case may be.

(l) "Person" has the meaning given in Section 3(a)(9) of the Exchange Act.

(m) "Plan" means the Highland Capital Management, L.P. Deferred Incentive Plan.

(n) "Shares" means shares of common stock of any corporation or other forms of equity interests or other securities of any entity granted as an award under the Plan, as adjusted pursuant to the Plan, and any successor (pursuant to a merger, amalgamation, consolidation or other reorganization) security.

**Section 2.** **Administration**.

(a) The Plan will be administered by the Administrator. The Plan is intended to comply, and will be administered in a manner that is intended to comply, with Section 409A of the Code and will be construed and interpreted in accordance with such intent. To the extent that an Award, issuance and/or payment is subject to Section 409A of the Code, it will be awarded and/or issued or paid in a manner that will comply with Section 409A of the Code, including any applicable regulations or guidance issued by the Secretary of the United States Treasury Department and the Internal Revenue Service with respect thereto.

(b) Pursuant to the terms of the Plan, the Administrator will have the power and authority, without limitation:

(1) to select Participants;

(2) to determine whether and to what extent Awards are to be granted hereunder to Participants;

- 2 -

DLI-266521681v5

CONFIDENTIAL

000686

D-NE-001618

(3)    to determine the type of Award to be granted hereunder;

(4)    to determine the terms and conditions, not inconsistent with the terms of the Plan, of each Award granted hereunder, including, but not limited to, (i) the restrictions, if any, applicable to Awards and the conditions under which restrictions, if any, applicable to such Awards will lapse, (ii) the performance goals and periods applicable to Awards, (iii) the vesting schedule applicable to each Award, (iv) the dollar amount or number of Shares subject to each Award and (v) subject to Section 6 of the Plan and the requirements of Section 409A of the Code (to the extent applicable), any amendments to the terms and conditions of outstanding Awards, including, but not limited to, accelerating the vesting schedule of such Awards;

(5)    to determine the terms and conditions, not inconsistent with the terms of the Plan (including Section 6), which will govern all written instruments evidencing Awards granted hereunder;

(6)    Subject to Section 6, to determine the effect, if any, of employment, severance and other agreements of Participants on the Participant's Awards, including, but not limited to (i) acceleration of vesting and (ii) rights upon termination or other change in employment duties and responsibilities; and

(7)    to determine the duration and purpose of leaves of absence which may be granted to a Participant without constituting termination of the Participant's employment or service for purposes of Awards granted under the Plan.

(c)    No officer or employee of the Company or any Affiliate thereof acting on behalf of the Administrator, will be personally liable for any action, omission, determination, or interpretation taken or made in good faith with respect to the Plan, and each and any officer or employee of the Company and of any Affiliate thereof acting on the behalf of the Administrator, to the maximum extent permitted by law, be fully indemnified and protected by the Company in respect of any such action, omission, determination or interpretation.

**Section 3.**    **Shares Reserved for Issuance Under the Plan**.  Subject to Section 4 hereof, the Company will hold or make reasonable arrangements to acquire the number of Shares granted as Awards or the amount of cash needed to satisfy the Awards upon vesting.

**Section 4.**    **Equitable Adjustments**.  In the event of any Change in Capitalization, an equitable substitution or proportionate adjustment will be made, in each case, as may be determined by the Administrator, in his reasonable discretion in good faith, in (i) the aggregate number of Shares reserved to satisfy Awards granted under the Plan and (ii) the kind and number of Shares or cash subject to outstanding Awards granted under the Plan; provided, however, that any fractional Shares resulting from the adjustment will be eliminated by rounding down to the nearest whole Share.  Such other equitable substitutions or adjustments will be made as may be determined by the Administrator, in his reasonable discretion in good faith.  Without limiting the generality of the foregoing, in connection with a Change in Capitalization, the Administrator may provide, in his reasonable discretion in good faith, for the cancellation of any outstanding Share-based Award or Share-based portion of an Award, as applicable, granted hereunder in

- 3 -

CONFIDENTIAL

000687

D-NE-001619

exchange for payment in cash or other property having an aggregate Fair Market Value of the Shares covered by such Award. The Administrator's determinations pursuant to this Section 4 will be final, binding and conclusive.

**Section 5.** **Eligibility**. The Participants under the Plan will be selected from time to time by the Administrator, in his reasonable discretion in good faith, from those individuals who qualify.

**Section 6.** **Amendment and Termination**. No action hereunder may, without the consent of a Participant, impair or delay the Participant's rights under any outstanding Award.

**Section 7.** **Unfunded Status of Plan**. The Plan is intended to constitute an "unfunded" plan for incentive compensation. With respect to any payments not yet made to a Participant by the Company, nothing contained herein will give any such Participant any rights that are greater than those of a general creditor of the Company.

**Section 8.** **Withholding Taxes**. To the extent that the Company is required to withhold federal, state, local or foreign taxes in connection with any payment made or benefit realized by a Participant or other person under this Plan, it will be a condition to the receipt of such payment or the realization of such benefit that the Participant or such other person make arrangements satisfactory to the Company for payment of the balance of such taxes required to be withheld. The Company and a Participant or such other person may also make similar arrangements with respect to the payment of any taxes with respect to which withholding is not required.

**Section 9.** **Transfer of Awards**. No purported sale, assignment, mortgage, hypothecation, transfer, charge, pledge, encumbrance, gift, transfer in trust (voting or other) or other disposition of, or creation of a security interest in or lien on, any Award or any agreement or commitment to do any of the foregoing (each, a "Transfer") by any holder thereof in violation of the provisions of the Plan or an Award Agreement will be valid; provided, however, that Transfers may be made by will or by the laws of descent and distribution. Any purported Transfer of an Award or any economic benefit or interest therein in violation of the Plan or an Award Agreement will be null and void *ab initio*, and will not create any obligation or liability of the Company, and any person purportedly acquiring any Award or any economic benefit or interest therein transferred in violation of the Plan or an Award Agreement will not be entitled to be recognized as a holder of such Award or any Shares underlying such Award. This Section 9 will not restrict Transfer of Awards following settlement of such Awards.

**Section 10.** **Continued Employment**. The adoption of the Plan will not confer upon any Participant any right to continued employment or service with the Company or any Affiliate thereof, as the case may be, nor will it interfere in any way with the right of the Company or any Affiliate thereof to terminate the employment or service of any of its Participants at any time.

**Section 11.** **Effective Date**. The Plan was adopted on March 31, 2015 (the "Effective Date").

**Section 12.** **Term of Plan**. No Award may be granted pursuant to the Plan on or after the tenth anniversary of the Effective Date, but Awards theretofore granted may extend beyond that date.

DLI-266521681v5

CONFIDENTIAL

000688

D-NE-001620

**Section 13.   Section 409A of the Code**.  Payments and benefits under the Plan are intended to comply with Section 409A of the Code to the extent subject thereto, and, accordingly, to the maximum extent permitted, the Plan will be interpreted and be administered to be in compliance therewith.  Any payments described in the Plan that are due within the "short-term deferral period" as defined in Section 409A of the Code will not be treated as deferred compensation unless applicable law requires otherwise.  Notwithstanding anything to the contrary in the Plan, to the extent required in order to avoid accelerated taxation and/or tax penalties under Section 409A of the Code, amounts that would otherwise be payable and benefits that would otherwise be provided pursuant to the Plan during the six month period immediately following a Participant's termination of employment or service will instead be paid on the first business day after the date that is six months following the Participant's separation from service (or upon the Participant's death, if earlier).  In addition, for purposes of the Plan, each amount to be paid or benefit to be provided to a Participant pursuant to the Plan, which constitutes deferred compensation subject to Section 409A of the Code, will be construed as a separate identified payment for purposes of Section 409A of the Code and not one of a series of payments.

**Section 14.   Compliance with Law and Agreements**.  Subject to compliance with Section 409A of the Code, the Company will not be obligated to transfer any Shares or other securities pursuant to the Plan or any Award Agreement if the transfer thereof would, in the reasonable opinion of the Company, result in a violation of law or a breach of a material agreement of the Company or its Affiliates.

**Section 15.   Governing Law**.  The Plan will be governed by and construed in accordance with the laws of the State of Texas, without giving effect to principles of conflicts of law of such state.

DLI-266521681v5

000689

CONFIDENTIAL

D-NE-001621

# EXHIBIT D

000690

## EMPLOYMENT AGREEMENT

This Employment Agreement (the "*Agreement*") between Highland Capital Management, L.P., a Delaware limited partnership (the "*Company*"), and Hunter Covitz (the "*Executive*"), is hereby entered into as of January 1, 2007, and replaces and supercedes all prior employment agreements and modifications, if any, between Executive and the Company.

WHEREAS, the Company and the Executive desire to continue the employment relationship under the following terms.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises, terms, covenants and conditions set forth herein and the performance of each, it is hereby agreed as follows:

## ARTICLE I

### Definitions

1.1.    Definitions.  In this Agreement, the following terms, unless the context otherwise requires, have the meanings indicated:

"*Affiliate*" means any Person that directly or indirectly controls, is controlled by, or is under common control with the Person in question.  As used in this definition, the term "*control*" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through ownership of voting securities, by contract or otherwise.

"*Agreement*" has the meaning set forth in the preamble to this Agreement.

"*Applicable Entities*" means the Company and its Affiliates.

"*Base Salary*" has the meaning set forth in Section 3.1(a).

"*Cause*" means conduct by the Executive amounting to (i) the Executive's conviction or plea of *nolo contendere* for any criminal offense or commission by the Executive of any act that the Company considers damaging to or tending to discredit any of the Applicable Entities; (ii) dishonesty, fraud, misconduct, unlawful discrimination, breach of contract, bad faith or theft on the part of the Executive that is injurious to any of the Applicable Entities; (iii) the Executive's using for his/her own benefit any confidential or proprietary information of any of the Applicable Entities, or willfully or negligently divulging any such information to third parties without the prior written consent of the Company; (iv) a breach or violation of the terms of this Agreement or other agreement to which the Executive and any of the Applicable Entities are party in any manner that adversely affects any of the Applicable Entities; (v) the failure or refusal of the Executive to follow the lawful directives of the Company (unless due to sickness, injury, or disabilities, but excluding self-inflicted injuries, drug usage in violation with Company policy or addiction to alcohol or other substances hazardous to health); (vi) inattention to duty or any other willful, reckless or negligent act (or omission to act) by the Executive, which, in the good faith judgment of the Company, injures any of the Applicable Entities; (vii) a breach of fiduciary duties; (viii) the Executive's commission or participation in any illegal act in the course of his/her employment with the Company, including violation of any statute or regulation; or (ix) the Executive's second commission of an act, of which the Executive is given written notice, that is determined by (A) James D. Dondero, with regard to any event involving James D. Dondero, or (B) both James D. Dondero and Mark K. Okada for an event involving Mark K. Okada or any other employee of an Applicable Entity, to

000691

constitute disrespect or unacceptably irreverent or inappropriate behavior to James D. Dondero, Mark K. Okada or any other employee of an Applicable Entity. Any determination of whether an Executive should be terminated for Cause pursuant to this Agreement shall be made in the reasonable discretion of the Company, shall be made in good faith and shall be binding upon all parties affected thereby.

"*Company*" has the meaning set forth in the preamble to this Agreement.

"*Competing Business*" means any business conducted by any of the Applicable Entities at the time the Executive's Continuous Status as an Executive ends.

"*Confidential Information*" includes, but is not limited to:

> (i)     Information concerning customers, clients, marketing, business and operational methods of the Applicable Entities and their customers or clients, contracts, financial or other data, technical data, email and other correspondence or any other confidential or proprietary information possessed, owned or used by the Applicable Entities;

> (ii)     Business, pricing and management methods and information;

> (iii)     Finances, strategies, systems, research, plans, reports, recommendations and conclusions;

> (iv)     Tear sheets, industry comparative analysis and information regarding Collateralized Loan Obligation (CLOs) and other structured products; and

> (v)     Names, arrangements with, or other information relating to, any of the Applicable Entities' customers, clients, suppliers, financiers, owners, representatives and other persons who have business relationships with any of the Applicable Entities or who are prospects for business relationships with any of the Applicable Entities;

> (vi)     Any matter or thing obtained or ascertained by the Executive through the Executive's association with the Applicable Entities the use or disclosure of which might reasonably be construed to be contrary to the best interests of the Applicable Entities.

"*Continuous Status as an Executive*" means that the Executive's employment with the Company is not interrupted or terminated. Continuous Status as an Executive shall not be considered interrupted in the case of (i) any leave of absence approved by the Company; (ii) transfers between locations of the Company or between the Company and any other Applicable Entity or any successor thereto; or (iii) any leave of absence permitted by applicable law. A leave of absence approved by the Company shall include sick leave, military leave, or any other personal leave approved by an authorized representative of the Company.

"*Disability*" means disability as defined by the terms of the Company's long-term disability plan as in effect at the determination of such Disability but will not include disabilities related to fatigue or stress. If, at any time during the term of this Agreement, the Company does not maintain a long-term disability plan, Disability shall mean a physical or mental condition which, in the judgment of the Company, permanently prevents the Executive from performing the essential functions of his/her position with the Company, with or without reasonable accommodation, or such other position or job that the Company makes available to him that is of similar status, similar compensation and similar responsibility and for which the Executive is qualified by reason of his/her education, training and experience. In making its determination, the Company may, but is not required to, rely on advice of a physician competent in the area to which such

000692

Disability relates. The Company may make the determination in its sole discretion, and any decision of the Company will be binding on all parties.

"*Executive*" has the meaning set forth in the preamble to this Agreement.

"*Long-term Incentive Plan*" means that certain Second Amended and Restated Long Term Incentive Plan, dated as of December 31, 2004, as such plan may be amended from time to time.

"*Non-Recruitment Period*" has the meaning set forth in Section 5.3.

"*Person*" means an individual or a corporation, partnership, trust, estate, unincorporated organization, association, or other entity.

"*Release Notice*" has the meaning set forth in Section 5.8.

"*Restricted Securities*" has the meaning set forth in Section 5.8.

"*Specialized Training*" includes, but is not limited to:

(i)     Training the Company provides to its employees that is unique to its business and enhances the Executive's ability to perform his/her job duties effectively, including disclosure and access to Confidential Information; and

(ii)     Orientation training, sales methods/techniques training, operation methods training, and computer and systems training.

"*Without Cause Severance Pay Period*" means the period of time for which the Executive may be entitled to severance pay upon termination of his/her Continuous Status as an Executive by the Company without Cause, as provided in Section 4.4.

## ARTICLE II

### Employment and Duties

2.1     Upon the terms and subject to the conditions contained in this Agreement, the Executive ~~agrees to provide full-time services for the Company during the term of this Agreement.~~ The Executive agrees to devote all of his/her time, energy, skill and best efforts to the performance of his/her duties hereunder and to the business of the Company, and shall perform his/her duties in a diligent, trustworthy, and business-like manner, all for the purpose of advancing the business of the Company. The Executive shall not at any time during the term of this Agreement work on any basis (including part-time or as an independent contractor) for a Competing Business and shall not participate in any material way in any other business that is not a Competing Business. Further, any non-material participation in any business that is not a Competing Business shall at all times comply with the written policies of the Company.

2.2     The Executive shall serve the Company as and shall have the title of Director, Structured Products. The duties of the Executive shall be those duties that can reasonably be expected to be performed by a person with such title. The Executive shall report directly and regularly to the President of the Company. The Executive agrees to serve, without additional compensation, in a similar executive capacity with any Applicable Entity.

000693

## ARTICLE III

### Compensation and Other Benefits

3.1     For all services rendered by the Executive to the Company, the Company shall compensate, or shall cause any Applicable Entity to compensate, the Executive as follows:

(a)     Salary and Bonus.  The annual salary (the "**Base Salary**") payable to the Executive during the term of this Agreement shall be an amount determined by the Company (in its sole discretion) and communicated in writing to the Executive, and will be subject to annual review pursuant to the Company's normal review policy for other similarly situated executives of the Company.  Any increase in salary shall be based upon the Executive's performance and shall be determined by the Company in its sole discretion.  In addition, the Company may from time to time award bonuses to the Executive based on such criteria as the Company may establish in its discretion.  Any such bonus, unless specifically stated otherwise, will be paid in accordance with the 2005 HCMLP Bonus Plan, will be paid in installments and is not earned or accrued until each payment date.  The Executive must be employed on the payment date(s) in order to be eligible for the bonus.  The payment of salary and bonuses shall be subject to all federal, state and withholding taxes, social security deductions and other general obligations.  Furthermore, the designation of the Executive's compensation does not constitute a guarantee of employment for any specific period of time.

Notwithstanding the preceding, in the event that the Executive commits an act that is determined in good faith by (i) James D. Dondero, with regard to any event involving James D. Dondero, or (ii) both James D. Dondero and Mark K. Okada for an event involving Mark K. Okada or another employee of an Applicable Entity, to constitute disrespect or unacceptably irreverent or inappropriate behavior to James D. Dondero, Mark K. Okada or another employee of an Applicable Entity, the Company may, effective with the next pay period following its delivery of a written notice to the Executive, reduce the Executive's then applicable Base Salary by fifty percent (50%) for a period not to exceed one calendar year.

(b)     Vacation.  The Executive shall be entitled to vacations consistent with the written vacation policy of the Company, provided that service for all Applicable Entities shall be recognized in implementing such policy.  Unless specifically stated to the contrary in writing by the Company, unused vacations in any year shall lapse and may not be carried forward.

(c)     Other Compensation and Benefits.  The Executive is entitled to participate during the term of this Agreement in any group health insurance plan, bonus, option or similar incentive compensation plan, including the Long-term Incentive Plan, 401(k) plan, group life plan and automobile allowance program that is made available, from time to time, to other executives of the Company, on a basis consistent with such participation and subject to the terms of the plan documents. Service for all Applicable Entities shall be recognized in implementing the policy of the relevant Applicable Entity in respect of any of the foregoing.

(d)     Reimbursement.  The Company shall reimburse, or shall cause any Applicable Entity to reimburse, the Executive for properly documented expenses that are incurred by the Executive on behalf of the Company or Applicable Entity in the performance of his/her duties hereunder in accordance with such Applicable Entity's policies in effect from time to time.

3.2     The Executive has previously been granted Long-term Incentive Units under the Long-term Incentive Plan.  Such Long-term Incentive Units are subject to the terms and conditions detailed in any Award Agreement(s) between the Executive and the Company, and the Long-term Incentive Plan.

000694

# ARTICLE IV

## Term At Will; Termination

4.1     <u>At Will Employment</u>.  The term of the Continuous Status as an Executive under this Agreement shall continue until terminated by the Company or the Executive at will, with or without Cause.

4.2     <u>Termination for Cause</u>.  The Company may terminate the Continuous Status as an Executive at any time for Cause.  Upon termination for Cause, the Company shall have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment hereunder, except for (i) any unpaid Base Salary accrued through the date of termination, (ii) any accrued but unused vacation time, (iii) any unreimbursed expenses properly incurred prior to the date of termination, and (iv) any amounts or rights to which the Executive is entitled under any other written agreements with the Company.

4.3     <u>Termination upon Death or Disability</u>.  The Executive's Continuous Status as an Executive may be terminated upon the death or Disability of the Executive.  Upon termination of the Executive upon death or Disability, the Company shall have no further liability or obligation to the Executive (or, in the case of death, his/her estate) under this Agreement or in connection with his/her employment hereunder, except for (i) any unpaid Base Salary accrued through the date of termination, (ii) any accrued but unused vacation time, (iii) any unreimbursed expenses properly incurred prior to the date of termination, and (iv) any amounts or rights to which the Executive is entitled under any other written agreements with the Company.

4.4     <u>Termination Without Cause</u>.  The Company may terminate the Continuous Status as an Executive at any time without Cause for any reason whatsoever.  Upon termination without Cause (except in the case of termination upon death or Disability, which shall be subject to <u>Section 4.3</u>), the Company shall have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment hereunder, except for (i) any unpaid Base Salary accrued through the date of termination, (ii) any earned but unused vacation time, (iii) any unreimbursed expenses properly incurred prior to the date of termination, (iv) any amounts or rights to which the Executive is entitled under any other written agreements with the Company, and (v) severance pay equal to the product of (a) three (3) weeks' Base Salary (at the rate then in effect at the time of such termination), multiplied by (b) the number of fully completed years of the Executive's Continuous Status as an Executive.  The Executive acknowledges that the Company's obligation to pay severance, if any, will arise only after the Executive's employment has terminated and, only if the Executive signs and returns a duly executed separation agreement and release substantially in the form attached hereto as <u>Exhibit A</u>. The Executive further acknowledges and agrees that severance pay, if any, constitutes consideration for the Executive's release of claims at the time of termination.  In the event the Executive declines to sign the separation agreement and release, he/she shall not be entitled to any severance, and the Company will have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment or termination.

4.5     <u>Voluntary Termination – No Competing Business</u>.  In the event that the Executive terminates his/her Continuous Status as an Executive hereunder and within one (1) year thereafter the Executive is not employed by a Competing Business, the Company shall have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment hereunder, except for (i) any unpaid Base Salary accrued through the date of termination, (ii) any accrued but unused vacation time, (iii) any amounts or rights to which the Executive is entitled under any other written agreements with the Company, (iv) any unreimbursed expenses properly incurred prior to the date of termination, and (v) severance pay equal to the product of (a) two (2) weeks Base Salary (at the rate then in effect at the time of such termination), multiplied by (b) the number of fully completed years of the Executive's Continuous Status as an Executive; *provided, however*, the total amount of such severance pay shall not exceed an amount equal to six (6) weeks' Base Salary (at the rate then in effect at the time of such termination).  The Executive acknowledges that the

000695

Company's obligation to pay severance, if any, will arise only after the Executive's employment has terminated and, only if the Executive signs and returns a duly executed separation agreement and release substantially in the form attached hereto as Exhibit A. The Executive further acknowledges and agrees that severance pay, if any, constitutes consideration for the Executive's release of claims at the time of termination. In the event the Executive declines to sign the separation agreement and release, he/she shall not be entitled to any severance, and the Company will have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment or termination.

4.6     Voluntary Termination – No Competing Business.  In the event that the Executive terminates his/her Continuous Status as an Executive hereunder and within one (1) year thereafter the Executive is employed by a Competing Business, the Company shall have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment hereunder, except for (i) any unpaid Base Salary accrued through the date of termination, (ii) any accrued but unused vacation time, (iii) any amounts or rights to which the Executive is entitled under any other written agreements with the Company, (iv) any unreimbursed expenses properly incurred prior to the date of termination, and (v) severance pay equal to two (2) weeks' Base Salary (at the rate then in effect at the time of such termination). The Executive acknowledges that the Company's obligation to pay severance, if any, will arise only after the Executive's employment has terminated and, only if the Executive signs and returns a duly executed separation agreement and release substantially in the form attached hereto as Exhibit A. The Executive further acknowledges and agrees that severance pay, if any, constitutes consideration for the Executive's release of claims at the time of termination. In the event the Executive declines to sign the separation agreement and release, he/she shall not be entitled to any severance, and the Company will have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment or termination.

4.7     Board Seat.  Upon the termination of the Continuous Status as an Executive for any reason, with or without Cause, if the Executive is on the board of directors or holds a position as an officer or committee member of any of the Applicable Entities or any other firm-related entities at the time of such termination, the Executive shall promptly resign from all of such positions by delivery of written notice to such effect.

# ARTICLE V

## Confidentiality and Non-Recruitment

5.1     The Company's Promise to Provide Confidential Information and Specialized Training.  At the inception of this Agreement, and continuing on an ongoing basis during the Executive's employment with the Company, the Company agrees to provide the Executive with new Confidential Information and Specialized Training to which the Executive has not previously had access.

5.2     The Executive's Promise not to Use or Disclose the Confidential Information.  In exchange for the Company's promise to provide the Executive with Confidential Information and Specialized Training, the Executive shall not, during his/her employment with the Company under this Agreement or at any time thereafter, disclose to anyone, including, without limitation, any Person, or publish, or use for any purpose, any Confidential Information, except as:  (i) required in the ordinary course of the Company's business or the Executive's work for the Company; (ii) required by law; or (iii) directed and authorized in writing by the Company.  Executive may also contact individuals with whom he/she conducted business during employment with the Company, for the purpose of establishing new business relations.  At the conclusion of the Executive's Continuous Status as an Executive, for any reason, the Executive shall immediately return and deliver to the Company any and all computers, hard-drives, papers, books, records, documents, memoranda, manuals, e-mail, electronic or magnetic recordings or data, including all copies thereof, belonging to the Company or any of the

000696

Applicable Entities, containing Confidential Information, or relating to the Company's or any of the Applicable Entities' business, which are in the Executive's possession, whether prepared by the Executive or others. Executive may retain a copy of the names, addresses and telephone numbers of persons with whom he conducted business during his/her employment with the Company. If at any time after termination of the Executive's participation in the Company, for any reason, the Executive determines that the Executive has any Confidential Information in the Executive's possession or control, the Executive shall immediately return to the Company all such Confidential Information in the Executive's possession or control, including all copies and portions thereof.

5.3     The Restrictive Covenants. Each Executive recognizes and agrees that: (i) the Company has devoted a considerable amount of time, effort, and expense to develop its Confidential Information and business goodwill; (ii) the Confidential Information and the Company's business goodwill are valuable assets to the Company; and (iii) any unauthorized use or disclosure of the Company's or any of the Applicable Entities' Confidential Information would cause irreparable harm to the Company for which there is no adequate remedy at law, including damage to the Company's business goodwill. Accordingly, each Executive agrees that to protect the Company's Confidential Information and business goodwill, it is necessary to enter into the following restrictive covenants, which are ancillary to the enforceable promises between the Executive and the Company in this Article V. The Executive, either individually or as a principal, partner, stockholder, manager, agent, consultant, contractor, employee, lender, investor, or as a director or officer of any corporation or association, or in any other manner or capacity whatsoever, agrees that during the period of the Executive's Continuous Status as an Executive, and for a period of one (1) year following the date on which the Executive's Continuous Status as an Executive ceases (for whatever reason) (the "**Non-Recruitment Period**"), the Executive shall not, whether directly or indirectly, without the express prior written consent of the Company (excluding the activities of the Executive's spouse or other immediate family members independently engaged in such activities):

        (a)     Non-Recruitment. Hire, solicit for employment, induce or encourage to leave the employment of the Company or otherwise cease their employment with any of the Applicable Entities, any employee or any former employee of any Applicable Entities whose employment with any of the Applicable Entities ceased than less than twelve (12) months earlier.

5.4     Remedies. The Executive acknowledges that the restrictions contained in this Article V, in view of the nature of the Company's business, are reasonable and necessary to protect the Company's legitimate business interests and business goodwill and that any violation of this Agreement would result in irreparable injury to the Company. In the event of a breach by the Executive of any provision of this Article V, the Company shall be entitled to a temporary restraining order and injunctive relief restraining the Executive from the commission of any breach, and to recover the Company's damages, attorneys' fees, costs and expenses related to the breach.

The existence of any claim or cause of action by the Executive against the Company, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company of the covenant contained in this Article V.

5.5     Tolling. If the Executive violates any of the restrictions contained in this Article V, the restrictive period will be suspended and will not run in favor of the Executive until such time that the Executive cures the violation to the satisfaction of the Company, or for a period of three (3) years after the Executive's employment with the Company ended, whichever period is shorter.

5.6     Notice. If a Executive, in the future, seeks or is offered employment, or any other position or capacity with another company or entity, the Executive agrees to inform each new employer or entity, before accepting employment, of the existence of the restriction in this Article V. The Company shall be entitled to

7

000697

advise such Person of the provisions of <u>Article V</u> and to otherwise deal with such Person to ensure that the provisions of <u>Article V</u> are enforced and duly discharged.

    5.7    <u>Prohibited Use of Material, Non-Public Information</u>. Executive understands that as a result of his/her employment with the Company, Executive has actual access, or is deemed to have access, to Material, Non-Public Information (as defined under Company policies and state or federal laws). The Executive further understands that trading on, personally or on behalf of others, or communicating Material, Non-Public Information to others outside of the Company, either during or after his/her employment with the Company, violates state and federal law. Executive will therefore during and after his/her employment with the Company use his/her best efforts to comply with such state and federal laws concerning the use of Material, Non-Public Information.

# ARTICLE VI

## Return of Company Property

All lists, records, designs, patents, plans, manuals, memoranda and other property delivered to the Executive by or on behalf of any of the Applicable Entities or by any of their clients or customers (including, but not limited to, clients or customers obtained for the Applicable Entities by the Executive), and all records compiled by the Executive that pertain to the business of the Applicable Entities (whether or not confidential) shall be and remain the property of the Company and be subject at all times to its discretion and control. Likewise, all correspondence with clients, customers or representatives, reports, research, records, charts, advertising materials, and any data collected by the Executive, or by or on behalf of the Applicable Entities or its representatives (whether or not confidential) shall be delivered promptly to the Company without request by it upon termination of the Continuous Status as an Executive.

# ARTICLE VII

## Miscellaneous

    7.1    <u>Complete Agreement</u>. There are no oral representations, understandings or agreements with the Company or any of its officers, directors or representatives covering the same subject matter as this Agreement. This written Agreement is the final, complete and exclusive statement and expression of the agreement between the Company and the Executive and of all the terms of this Agreement; it cancels and replaces and supersedes all prior agreements or modifications with respect to the subject matter hereof, and it cannot be varied, contradicted or supplemented by evidence of any prior or contemporaneous oral or written agreements. This written Agreement may not be later modified except by a further writing signed by the Company and the Executive, and no term of this Agreement may be waived except by a writing signed by the party waiving the benefit of such terms.

    7.2    <u>No Waiver</u>. No waiver by the parties hereto of any default or breach of any term, condition or covenant of this Agreement shall be deemed to be a waiver of any subsequent default or breach of the same or any other term, condition or covenant contained herein.

    7.3    <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and permitted assigns. The Company may assign this Agreement to a Person who or which directly or indirectly succeeds to all or any substantial part of the Company's assets

000698

or business.  This Agreement is personal to the Executive and may not be assigned or delegated by him and any such purported assignment or delegation shall be null and void.

   7.4  Severability; Headings.  If any portion of this Agreement is held invalid or inoperative, the other portions of this agreement shall be deemed valid and operative, and so far as it is reasonable and possible, effect shall be given to the intent manifested by the portion held invalid or inoperative.  The paragraph headings herein are for reference purposes only and are not intended in any way to describe, interpret, define or limit the extent or intent of this Agreement or any part hereof.

   7.5  Interpretation.  As used in this Agreement, (i) the term *"includes"* and the word *"including"* and words of similar import shall be deemed to be followed by the words *"without limitation"*; (ii) definitions contained in this Agreement apply to singular as well as the plural forms of such terms and to the masculine as well as to the feminine and neuter genders of such terms; (iii) words in the singular shall be held to include the plural and vice versa, and words of one gender shall be held to include the other gender as the context requires; (iv) the terms *"hereof,"* *"herein,"* and *"herewith"* and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement, and Article, Section, subsection, paragraph references are to the Articles, Sections, subsections and paragraphs of this Agreement unless otherwise specified; (v) the word *"or"* shall not be exclusive; and (vi) provisions shall apply, when appropriate, to successive events and transactions.

   7.6  Governing Law; Resolution of Disputes; Service of Process.  This Agreement shall, at the choice of the Company, be construed according to the laws of the State of Texas or the applicable law of the state in which the Executive worked for Company.  All disputes relating to the interpretation and enforcement of the provisions of this Agreement shall, at the choice of the Company, be resolved and determined exclusively by the federal or state courts in Dallas County, Texas, or in the federal or state courts in the state where the Executive worked for the Company.  Service of process shall be effective when given in the manner provided for notices hereunder.

*Remainder Of Page Intentionally Left Blank.*
*Signature Page(s) to Follows.*

000699

IN WITNESS WHEREOF the parties have signed and delivered this Agreement as of the date first set forth above.

**HIGHLAND CAPITAL MANAGEMENT L.P.**

By: _____

James D. Dondero,
President of its General Partner, Strand Advisors, Inc.

**EXECUTIVE**

_____ 8/27/07

Name: Hunter Covitz

**EXHIBIT A**

**FORM OF SEPARATION AGREEMENT AND RELEASE**

This Separation Agreement and Release ("*Agreement*") is between Highland Capital Management L.P. ("*Employer*") and [*Executive*] ("*Employee*").

WHEREAS, Employee has been employed by Employer; and

WHEREAS, Employee's employment with Employer is terminated, effective [*DATE*].

WHEREAS, Employee and Employer wish to resolve amicably all outstanding issues between them.

THEREFORE, in consideration of the promises set forth below, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.　　The unnumbered preceding paragraphs are incorporated herein by reference.

2.　　Employee's employment with Employer is terminated, effective [*DATE*].

Employer shall pay employee for salary through the date of termination, accrued but unused vacation pay due, and any outstanding reimbursable expenses incurred through the date of termination.

3.　　**SEVERANCE.** Employer shall pay Employee [*$_____*] as severance pay (the "*Severance Payments*") in accordance with the following payment schedule: [*RESERVED*]. This amount will be paid net of withholding taxes and any amount owed to the Employer for vacation taken over the accrued amount.

　　A.　　Employee acknowledges that he/she is not entitled to the Severance Payments but for his/her execution of this Agreement and Sections 4 through 6 in particular. Employee acknowledges that he/she is not entitled to any further compensation, except as otherwise set forth on Schedule 1, from Employer pursuant to this Agreement or his/her employment.

　　B.　　If Employee breaches this Agreement prior to full payment of the Severance Payments, then, in addition to any other remedy at law or in equity which Employer may have, Employer shall not be obligated to pay an unpaid part of the Severance Payment.

4.　　**RELEASE.** Employee on behalf of Employee, his/her heirs, executors, successors and assigns, hereby releases, remises and discharges Employer and each and every one of its former or current directors, officers, employees, members, agents, successors, predecessors, subsidiaries, assigns and attorneys of and from all actions, causes of action, claims or complaints (collectively, "*Claims*") in law or equity which Employee or his/her heirs, executors, administrators, assigns, agents, representatives, attorneys, officers or employees ever had or now has by reason of any matter, cause or thing whatsoever at any time up to and including the date of execution of this Agreement, including but not limited to any Claim of discrimination, harassment, retaliation, breach of contract, wrongful termination, interference with contractual relations, intentional infliction of emotional distress, any alleged violation of

any federal, state or local statutes, regulations or ordinances, including but not limited to the federal and state laws known as the Civil Rights Acts of 1964 and 1991, the Age Discrimination in Employment Act, the Americans With Disabilities Act, the Employee Retirement Income Security Act (other than any accrued benefit(s) to which Employee has a non-forfeitable right under any ERISA pension benefit plan), the retaliation provisions of the Fair Labor Standards Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, and any amendments to any of the foregoing, or any other Claims of any kind. Such release includes, but is not limited to, any claim Employee or his/her counsel may have, or had, for payment of attorney's fees, commissions or reimbursement of expenses. Furthermore, except as provided herein, Employee shall not pursue any such Claim in any court, agency, board, committee or forum whatsoever, and shall reimburse Employer for all fees and expenses associated with Employer's defense should Employee pursue such a Claim, unless that claim challenges the knowing and voluntary nature or the validity of this Separation Agreement and Release under the Older Worker Benefit Protection Act [*this only needs to be included if the employee is 40 years old or older*]. However, this does not preclude Employee from exercising his/her right, if any, to apply for unemployment benefits.

5.  The content of this Agreement, the fact of the execution of this Agreement and the circumstances leading to the execution of the Agreement, are confidential and are not to be disclosed by any party except as necessary to a party's respective accountants, attorneys, income tax preparers or similar professionals, each of whom shall be bound by this confidentiality requirement. All documents, records, techniques, business secrets and other information which have come into Employee's possession from time to time during Employee's affiliation with the Employer and/or any of its subsidiaries or affiliates shall be deemed to be confidential and proprietary to the Employer and/or any of its subsidiaries or affiliates and shall be their sole and exclusive property. Employee agrees that Employee will keep confidential and not divulge to any other party any of the Employer's or its subsidiaries' or affiliates' confidential information and business secrets, including, but not limited to, such matters as investor information, proprietary investment strategies, portfolio information, key personnel, operational methods, plans for future developments, and other business affairs and methods and other information not readily available to the public, except as required by law. Additionally, Employee agrees that he/she shall promptly return to the Company any and all confidential and proprietary information that is currently in Employee's possession.

6.  **NONDISPARAGEMENT/NONDISRUPTION.**

    A.  Employee and Employer shall reasonably cooperate with one another to effect a smooth transition of Employee's workload.

    B.  Employee shall not disparage Employer, any partner or employee of Employer nor will Employer's officers and directors disparage Employee in any communication with any third party. Employer and Employee agree that this is a material term of this Agreement. This Section 6.B. does not restrict either party from responding fully and truthfully in the context of a legal or other government proceeding in which either is under oath or responding to subpoena or otherwise required by law to cooperate with a government entity.

    C.  Neither Employee nor Employer shall not take any action to disrupt the business operations of the other.

000702

7. Employee understands and agrees that this Release Agreement shall not in any way be construed as an admission by Employer of any unlawful or wrongful acts whatsoever against employee or any other employee, and Employer specifically disclaims any liability to or wrongful acts against Employee or any other person.

8. **Please Note—For the Agreement to validly release claims under the Age Discrimination and Employment Act for employees who are 40 years old or older, the Agreement must contain certain language.**

   (a) **Please note—Language if employee is under 40 years old.** The parties acknowledge that each has read carefully this entire Agreement, including but not limited to the release provision of <u>Section 4</u>. By executing this Agreement, Employee acknowledges that (a) Employee has been advised to consult with an attorney of his/her own choosing regarding the terms of this Agreement, (b) any and all questions regarding the terms of this Agreement have been asked and answered to his/her complete satisfaction, (c) Employee has read this Agreement and fully understands its terms and their importance, (d) except as provided in this Agreement, Employee has no other right or claim to any other payments or benefits, and that the consideration provided for herein is good and valuable and of a kind to which Employee was not otherwise entitled, and (e) Employee is entering into this Agreement voluntarily, of his/her own free will, and without any coercion, undue influence, threat or intimidation of any kind or type whatsoever.

   (b) **Please note—Language for a single termination if employee is 40 years old or older.** Employee represents and agrees that he/she has had a reasonable time to review the Agreement and is voluntarily entering into this Agreement. Employee understands that he/she may revoke this Agreement within seven (7) days after execution. Employee's notice of revocation must be in writing and addressed and delivered to the attention of (insert name and address), on or before the end of the seven (7)-day period. This Agreement will not be effective or enforceable against the Employer until eight (8) days after the Employer has received employee's signed copy of this Agreement. That will be the "effective date" of this Agreement. If the Employee revokes this Agreement as described herein, the Agreement will not become effective, and Employee will not receive the payments set forth in this Agreement. By signing below, Employee further confirms that he: (a) has read this Agreement carefully and completely; (b) has been given a period of at least twenty-one (21) days to consider and review this Agreement; (c) has been advised to consult with legal counsel; and (d) understands all the provisions in this Agreement.

Employee understands that it is his/her choice whether or not to enter into this Separation Agreement and Release and that his/her decision to do so is voluntary and made knowingly in the absence of fraud, duress, or coercion.

   (c) **Please note—Language for multiple terminations if employees are 40 years old or older.** Employee acknowledge that he/she has been advised in writing by Employer that he/she should consult with an attorney prior to executing this Agreement, and Employee further acknowledges that he/she

000703

has been given a period of forty-five (45) calendar days after his/her termination by Employer within which to review and consider the provisions of this Separation Agreement and Release.

Employee acknowledges that he/she has been given information regarding the ages and job titles of persons terminated and eligible for severance as a result of Employer's terminations, and of those persons who are not eligible.

Employee understands and acknowledges that he/she has seven (7) calendar days following the execution of the Separation Agreement and Release to revoke his/her acceptance of this Separation Agreement and Release and that this Agreement shall not become effective and the severance shall not become payable until this revocation period has expired. In order to revoke this Separation Agreement and Release, Employee acknowledges that he/she is required to deliver written notice clearly stating his/her intent to revoke this Separation Agreement and Release to (insert name and address). Employee agrees that his/her notice will not be considered effective unless (insert name), or a representative designated by employer receives it within seven (7) calendar days following Employee's execution of this Separation Agreement and Release.

Employee understands and acknowledges that it is his/her choice whether or not to enter into this Separation Agreement and Release that his/her decision to do so is voluntary and made knowingly in the absence of fraud, duress, or coercion.

9.     This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

10.    If any portion of this Agreement is void or deemed unenforceable for any reason, the unenforceable portion shall be deemed severed from the remaining portions of this Agreement that shall otherwise remain in full force and effect.

11.    This Agreement constitutes the entire agreement between the parties and supersedes any and all prior agreements or understandings relating thereto. This Agreement may be modified only in writing and signed by both parties.

**Please read carefully as this document includes a release of claims.**

As evidenced by my signature below, I hereby certify that I have read the above Separation Agreement and Release and agree to its terms.

**Highland Capital Management L.P.**

Name: _Hunter Covitz_                          By:_____

Date: _5/7/07_                                 Name:_____

                                               Title:_____

                                               Date:_____

# EXHIBIT E

000705

*Execution Version*

**FIFTH AMENDED AND RESTATED**

**AGREEMENT OF LIMITED PARTNERSHIP**

**OF**

# HIGHLAND CAPITAL MANAGEMENT, L.P.

(A Delaware Limited Partnership)

August 11, 2021

This FIFTH AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP (this "*Agreement*") of Highland Capital Management, L.P., (the "*Partnership*"), dated as of August 11, 2021 and entered into by and among the HCMLP GP LLC as general partner of the Partnership (the "*General Partner*") and the limited partner of the Partnership as set forth on Schedule A hereto (the "*Limited Partner*"), amends and restates in its entirety the Fourth Amended and Restated Agreement of Limited Partnership of the Partnership dated as of December 24, 2015 (as amended to date, the "*Prior Agreement*"), by and among Strand Advisors, Inc. (the "*Prior General Partner*") and the former limited partners of the Partnership who were limited partners of the Partnership (the "*Prior Limited Partners*").  The General Partner and Limited Partners are collectively referred to as the "*Partners*."

WHEREAS, the Prior Agreement, as amended pursuant to that certain amendment dated January 27, 2021, provides for the reconstitution and continuation of the Partnership if new limited partners are admitted to the partnership within 90 days after dissolution thereof and such new limited partners consent to the continuation of the Partnership.

WHEREAS, the Partnership was reorganized pursuant to the Plan of Reorganization of Highland Capital Management, L.P., that was approved by the United States Bankruptcy Court for Northern District of Texas, Dallas Division, on February 22, 2021 (the "*Plan*").

WHEREAS, pursuant to the Plan the limited partnership interests of the Prior Limited Partners and the Prior General Partner were canceled on August 11, 2021 and new limited partnership interests were issued to the Limited Partner and the General Partner under the Prior Agreement.

WHEREAS, the General Partner and the Limited Partner wish to ratify the admission to the Partnership of the General Partner and the Limited Partner and to amend and restate the terms of the Partnership as set forth in this Agreement.

NOW, THEREFORE, in consideration of the agreements and obligations set forth herein, the undersigned hereby agree as follows:

1.    Continuation.

(a)    Subject to the provisions of this Agreement, the Partners hereby continue the Partnership as a limited partnership pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act (6 *Del.C.* §17-101, *et seq.*), as amended from time to time (the "*Act*"). This Agreement amends, restates, and supersedes the Prior Agreement and all other prior agreements or understandings with respect to the matters covered herein.

(b)    The Limited Partner, being the sole limited partner of the Partnership, hereby (i) consents to the continuation of the Partnership and (ii) ratifies and approves the appointment of the General Partner as general partner of the Partnership.

2.    Organizational Matters.

(a)    *Name; Certificate*.    The name of the Partnership is Highland Capital Management, L.P.  The Partnership was organized as a limited partnership pursuant to the Act and

ActiveUS 184864835v.2

filed a Certificate of Limited Partnership (the "*Certificate*") with the Secretary of State of the State of Delaware.  Any person authorized to act on behalf of the General Partner or the Partnership may, subject to Section 19 below, cause the Partnership to file such other certificates and documents as may be necessary or appropriate to comply with the Act and any other applicable requirements for the operation of a limited partnership in accordance with the laws of the State of Delaware and any other jurisdictions in which the Partnership shall conduct business, and to maintain such filings for so long as the Partnership conducts business therein.

(b)    *Offices*.  The name of the resident agent for service of process for the Partnership and the address of the registered office of the Partnership in the State of Delaware is Corporation Services Company, 2023 Centre Road, Wilmington Delaware 19805-1297.  The General Partner may establish places of business of the Partnership within and without the State of Delaware, as and when required by the Partnership's business and in furtherance of its purposes set forth herein, and may appoint (or cause the appointment of) agents for service of process in all jurisdictions in which the Partnership shall conduct business.  The General Partner may from time to time in its sole discretion change the Partnership's places of business, resident agent for service of process, and/or the location of its registered office in Delaware.

3.    <u>Purpose; Powers</u>.  The Partnership is formed for the purpose of engaging in any lawful act or activity for which limited partnerships may be formed under the Act.  Without limiting the foregoing, the general character and purposes of the business of the Partnership are to (a) engage in the business, directly and/or through one or more subsidiaries, of liquidating assets of, and performing investment management and advisory services for, pooled investment vehicles, funds, investment holdings, accounts, and interests therein; and (b) engage in any lawful activities (including, subject to the other provisions of this Agreement, the borrowing of money and the issuance of guarantees of indebtedness of others) directly or indirectly related or incidental thereto and in which  a Delaware limited partnership may lawfully engage.  The Partnership shall have and exercise all of the powers and rights conferred upon limited partnerships formed pursuant to the Act.

4.    <u>Management</u>.

(a)    *Authority of the General Partner*.  The business and affairs of the Partnership shall be managed exclusively by and under the direction of the General Partner, which shall have the right, power and authority to exercise all of the powers of the Partnership except as otherwise provided by law or this Agreement.  Decisions or actions made or approved by the General Partner in accordance with this Agreement shall constitute decisions or actions by the Partnership and shall be binding upon the Partnership and each Limited Partner of the Partnership.  The General Partner may not be removed or replaced by the Limited Partners.  In the event of the withdrawal, resignation or dissolution of the General Partner, a new General Partner shall be designated in writing by a majority in interest of the Limited Partners, who shall provide written notice to the remaining Limited Partners of such designation.

(b)    *Delegation of Powers; Officers*.  Notwithstanding anything to the contrary herein, the General Partner may delegate any or all or any portion of its rights, powers, authority, duties and responsibilities with respect to the management of the Partnership to such officers of the Partnership with such titles as the General Partner may determine ("*Officers*").  The General Partner

2

may authorize any such Officers to sign agreements, contracts, instruments, or other documents in the name of and on behalf of the Partnership, and such authority may be general or limited to specific instances. The power and authority of any Officer appointed by the General Partner under this Section 4(b) shall not exceed the power and authority possessed by the General Partner under this Agreement. The Officers shall hold office until their successors are duly appointed or their earlier death, resignation, or removal. Any Officer so appointed may be removed at any time, with or without cause, by the written consent of the General Partner. Any Officer may resign from his or her office upon prior written notice to the Partnership. If any office shall become vacant, a replacement Officer may be appointed by the written consent of the General Partner. Two or more offices may be held by the same person. The initial Officers of the Partnership are set forth on Schedule B.

(c) *Limited Partners*. No Limited Partner shall have any right to participate in the management of the Partnership as a Limited Partner. Moreover, no Limited Partner shall have any voting rights except with respect to consent to amendments as set forth in Section 19 below, or as otherwise required by the Act.

(d) *Transactions with Affiliates*. The General Partner or any person controlling, controlled by, or under common control with the General Partner (an "***Affiliate***") may engage in transactions with the Partnership from time to time, including without limitation for lending to or borrowing from the Partnership, engaging in the provision of services to the Partnership, or otherwise engaging in business transactions with the Partnership, provided that such transactions are entered into in good faith. Unless otherwise expressly provided in this Agreement or any other agreement contemplated herein, whenever a conflict of interest exists or arises between the General Partner or any of its Affiliates, on the one hand, and the Partnership or any Limited Partner, on the other hand, any action taken by the General Partner, in the absence of bad faith by the General Partner, shall not constitute a breach of this Agreement or any other agreement contemplated herein or a breach of any standard of care or duty imposed herein or therein or under the Act or any other applicable law, rule, or regulation.

5. Partners.

(a) *General*. The name, address, and percentage interest ownership interest of the General Partner and each Limited Partner in the Partnership (the "***Percentage Interest***") are set forth on Schedule A hereto. Additional Limited Partners may be admitted to the Partnership, and Schedule A may be amended, only with the written consent of the General Partner (provided, that failure to update Schedule A shall not itself be conclusive of whether consent of the General Partner has been obtained). No Limited Partner shall have the right or power to resign, withdraw or retire from the Partnership, except upon (i) the occurrence of any event described in Section 17-801 of the Act (in which case the Limited Partner(s) with respect to which such event has occurred shall, automatically and with no further action necessary by any person, cease to be a Limited Partner, and shall be deemed to have solely the interest of an assignee (within the meaning of Section 17 of the Act) with respect to such Limited Partner's Limited Partnership Interest), or (ii) with the consent of the General Partner. For the avoidance of doubt, no action may be taken to reduce, directly or indirectly, the Percentage Interest of any Partner without the written consent of such Partner.

3

(b) *Capital Contributions*.  The Partners may, in their sole discretion, make additional capital contribution to the Partnership if requested by the General Partner.  All capital, whenever contributed, shall be subject in all respects to the risks of the business and subordinate in right of payment to the claims of present or future creditors of the Partnership in accordance with this Agreement.

(c) *Capital Accounts*.  The Partnership shall maintain a capital account for each Partner in accordance with Section 704(b) and 704(c) of the Internal Revenue Code of 1986, as amended (the "*Code*"), and the principles of the Treasury Regulations promulgated thereunder.

(d) *Tax Representative*.  The General Partner shall serve as the "tax representative" to be the Partnership's designated representative within the meaning of Section 6223 of the Code with sole authority to act on behalf of the Partnership for purposes of subchapter C of Chapter 63 of the Code and any comparable provisions of state or local income tax laws (the "*Tax Representative*").  The Tax Representative is specifically directed and authorized to take whatever steps it deems necessary or desirable to perfect such designation, including, without limitation, filing any forms or documents with the Internal Revenue Service, properly designating a particular individual to act on its behalf of the Tax Representative and taking such other action as may from time to time be required under Treasury Regulations.  The Tax Representative is hereby authorized to and shall perform all duties of a "tax representative" and shall serve as Tax Representative until its resignation or until the designation of its successor, whichever occurs sooner.

6. Allocation of Income and Losses.

(a) *Definitions*.  For purposes of this Agreement, "*Income*" and "*Loss*" of the Partnership shall mean the taxable income and loss, respectively, of the Partnership computed with the adjustments set forth in Treasury Regulation under Code Section 704(b) including (A) adjustments pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(g), (B) the inclusion of the amount of any tax-exempt income as an item of income, (C) the inclusion of the amount of any nondeductible, noncapitalizable expense as an item of deduction and (D) the inclusion of the amount of unrealized gain or unrealized loss with respect to an asset of the Partnership as an item of income or gain (as applicable) upon distribution of such asset in kind or as required by Treasury Regulation Section 1.704-1(b)(2)(iv)(f).

(b) *Allocations Generally*.  The Income and Loss of the Partnership for each fiscal year or other applicable period shall be allocated to and among the Partners in proportion to their respective Percentage Interests.

(c) *Adjustments*.  Notwithstanding Section 6(b) (but subject to Section 6(c)),

(i) Items of income or gain for any taxable period shall be allocated to the Partner in the manner and to the extent required by the "qualified income offset" provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(d); and

(ii) In no event shall any Loss or item of deduction be allocated to a Partner if such allocation would cause or increase a negative balance

4

in such Partner's capital account determined by increasing the Partner's capital account balance by any amount the Partner may be obligated to restore to the Partnership pursuant to Treasury Regulation Section 1.704-1(b)(2)(ii)(c) and by decreasing such capital account balance by the amounts specified in Treasury Regulation Sections 1.704-1(b)(2)(ii)(d)(4), (5) and (6)).

(d) *Nonrecourse Debt*. If at any time the Partnership incurs any "nonrecourse debt" (*i.e.,* debt that is treated as nonrecourse for purposes of Treasury Regulation Section 1.1001-2), the following provisions will apply notwithstanding anything to the contrary expressed elsewhere in this Agreement:

(i) "Nonrecourse deductions" (as defined in Treasury Regulation Sections 1.704-2(b) and (c)) shall be allocated to the Partners in proportion to their respective Percentage Interests.

(ii) All other allocations relating to such nonrecourse debt shall be allocated in accordance with Treasury Regulation Section 1.704-2; and

(iii) For purposes of Sections 6(b) and 6(c), each Partner's capital account balance shall be increased by the Partner's share of minimum gain and of partner nonrecourse debt minimum gain (as determined pursuant to Treasury Regulation Sections 1.704-2(g) and 1.704-2(i)(5), respectively).

(e) *Deductions, Credits*. Except as otherwise provided herein or as required by Code Section 704, for federal income tax purposes, all items of income, gain, loss, deduction or credit shall be allocated to the Partners in the same manner as are Income and Loss.

(f) *Regulatory Allocations*. Notwithstanding the provisions of Sections 6(a)-(e) above, allocations of Income and Loss shall be made in the order of priority set forth in Exhibit I to this Agreement.

(g) *Withholding*. To the extent that the Partnership is required to withhold and pay over any amounts to any Governmental Authority with respect to Distributions or allocations to any Limited Partner, the amount withheld shall be treated as a Distribution to that Limited Partner pursuant to Sections 4.02, 4.03 or 4.05, as applicable. In the event of any claimed over-withholding, Limited Partners shall be limited to an action against the applicable jurisdiction and not against the Partnership (unless the Partnership has not yet paid such amounts over to such jurisdiction). If any amount required to be withheld was not, in fact, actually withheld from one or more Distributions and the Partnership shall have been required to pay such amount to such Governmental Entity, the Partnership may, at its option, (i) require the affected Limited Partner to reimburse the Partnership for such withholding or (ii) reduce any subsequent Distributions to such Limited Partner by the amount of such withholding, in each case plus interest. Each Limited Partner agrees to furnish the Partnership with such documentation as shall reasonably be requested by the Partnership to assist it in determining the extent of, and in fulfilling, its withholding

5

obligations.  Each Limited Partner will indemnify the General Partner and the Partnership against any losses and liabilities (including interest and penalties) related to any withholding obligations with respect to allocations or Distributions made to such Limited Partner by the Partnership.

(h)     *Consistent Tax Reporting*.  Except as otherwise unanimously agreed to in writing by the Limited Partners, for U.S. federal, state and local income tax purposes, the Limited Partners agree, as a condition to their admission to the Partnership, to report all taxable income, loss and items thereof (including the character and timing of such items) in a manner consistent with the manner in which such taxable income, loss or item thereof is reported by the Partnership on its tax returns and the Schedules K-1 (or any successor form) furnished by the Partnership to the Limited Partners.

7.     Distributions.  Distributions shall be made from the undistributed profit and loss account to the Partners at the times and in the aggregate amounts determined by the General Partner in its sole discretion; provided, that distributions shall be made to the Partners in accordance with their Percentage Interests.  Distributions may be in cash or in kind as determined by the General Partner in its sole discretion.  Notwithstanding any provision to the contrary contained in this Agreement, the Partnership shall not make a distribution to the Limited Partners on account of its interest in the Partnership if such distribution would violate Section 17-607 of the Act or other applicable law.

8.     Other Business.  The Partners and their affiliates may engage in or possess an interest in other business ventures (unconnected with the Partnership) of every kind and description, independently or with others.  The Partnership shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

9.     Limited Liability.  The debts, obligations, and liabilities of the Partnership, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Partnership and the General Partner.  No Limited Partner shall have any liability (personal or otherwise) for any such debt, obligation, or liability of the Partnership solely by reason of acting in such capacity.  For the avoidance of doubt, to the extent a Limited Partner is an Officer of the Partnership (regardless of title) and/or has authority to act on behalf of the General Partner of the Partnership, such Limited Partner shall remain a Limited Partner of the Partnership and shall not be subject to any liability (personal or otherwise) for any debt, obligation or liability of the Partnership.

10.     Indemnification.

(a)     *General*.  To the fullest extent permitted by law, subject to Section 10(c) below, the Partnership shall indemnify each Covered Person (as defined below) for any and all losses, claims, demands, costs, damages, liabilities (joint and several), expenses of any nature (including attorneys' fees and disbursements), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which such Covered Person may be involved or threatened to be involved, as a party or otherwise, by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Partnership and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement.  For the avoidance of doubt, the indemnification under this Section 10(a) shall apply even though at the time of such claim, demand, action, suit or proceeding such person is no longer a Covered Person.  Any

6

indemnity under this Section 10(a) shall be provided out of and only to the extent of the Partnership's assets, and no Limited Partner shall have personal liability on account thereof.

(b)     *Covered Persons*. "***Covered Person***" means each of the following:

(i)     the General Partner, and each member, partner, director, officer, and agent thereof,

(ii)     each person who is or becomes an Officer of the Partnership on or after the date hereof, and

(iii)     any other current or former officer, director, employee or agent for the Partnership or the General Partner, in each case to the extent determined by the General Partner in its sole discretion.

(c)     *Limitations on Indemnification*. Notwithstanding anything to the contrary herein, no indemnification shall be provided for any Covered Person (i) with respect to any action brought by such Covered Person as a plaintiff against the Partnership or another Covered Person, or (ii) for any loss, damage or claim arising from such Covered Person's fraud, gross negligence or willful misconduct (in each case as determined by a final and binding judgment of a court or arbitrator).

(d)     *Advancement of Expenses*. Expenses reasonably incurred in defending any claim, action, suit or proceeding of the character described in Section 10(a), to the extent available, shall be advanced by the Partnership prior to the final disposition of such claim, action, suit or proceeding upon receipt of a written undertaking by or on behalf of the recipient to repay all such advances if it is ultimately determined by the General Partner that such Covered Person is not entitled to indemnification pursuant to Section 10(c).

(e)     *Third Party Beneficiaries*. Covered Persons shall be deemed to be third-party beneficiaries solely for purposes of this Section 10. All rights of any Covered Person under this Section shall inure to the benefit of such Covered Person's heirs and assigns.

11.     Fiscal Year. The fiscal year of the Partnership shall end on December 31st of each year.

12.     Transfers of Limited Partner Interests. No Limited Partner may transfer, in whole or in part, whether by sale, exchange, lease, license, assignment, distribution, gift, transfer or other disposition or alienation in any way, its interest in the Partnership, without the prior consent of the General Partner, which consent may be given or withheld in the sole discretion of the General Partner and may include such terms and conditions as the General Partner shall deem appropriate in its sole discretion. In addition, it shall be a condition precedent to every transfer of all or any portion of a Limited Partner's interest permitted hereunder, the transferring Limited Partner shall demonstrate to the satisfaction of the General Partner that (i) the proposed transfer will not cause or result in a breach of any violation of law, including U.S. federal or state securities laws, and (ii) that the transfer would not adversely affect the classification of the Partnership as a partnership for U.S. federal tax purposes (including by causing the Partnership to be treated as a "publicly traded partnership" under Section 7704 of the Code), terminate it as a partnership under Code Section 708,

ActiveUS 184864835v.2

or have a substantial adverse effect with respect to U.S. federal income taxes payable by the Partnership.

13. <u>Dissolution</u>. The Partnership shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the consent of the General Partner; (ii) at any time there are no Limited Partners of the Partnership, unless the business of the Partnership is continued in a manner permitted by the Act; or (iii) the entry of a decree of judicial dissolution under Section 17-802 of the Act. Following the foregoing event, the General Partner shall proceed diligently to liquidate the assets of the Partnership in a manner consistent with commercially reasonable business practices. In the event of dissolution, the Partnership shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Partnership in an orderly manner), and the assets of the Partnership shall be applied in the manner, and in the order of priority, set forth in Section 17-804 of the Act. Liquidating distributions to the Partners shall be made in in accordance with their Percentage Interests.

14. <u>Severability of Provisions</u>. Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

15. <u>Counterparts</u>. This Agreement may be executed in several counterparts and as so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all of the parties have not signed the same counterpart.

16. <u>Facsimile Signature Page</u>. This Agreement may be executed and delivered by the parties hereto by an executed signature page transmitted by facsimile, and any failure to deliver the originally executed signature page shall not affect the validity, legality or enforceability of this Agreement.

17. <u>Entire Agreement</u>. This Agreement embodies the entire agreement and understanding among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

18. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware (without regard to the conflicts of law principles), all rights and remedies being governed by said laws.

19. <u>Amendments</u>. No amendment of this Agreement shall be valid or binding unless such amendment is made with the written consent of the General Partner. Further, any amendment of this Agreement that reduces the Percentage Interest or economic rights of any Limited Partner in a manner that is disproportionate to other Limited Partners shall require the written consent of the affected Limited Partner. For the avoidance of doubt, amendment includes any merger, combination or other reorganization or any amendment of the Certificate that has the effect of changing or superseding the terms of this Agreement.

*[Remainder of Page Intentionally Blank]*

ActiveUS 184864835v.2

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first set forth above.

**GENERAL PARTNER:**

**HCMLP GP LLC**

By: Highland Claimant Trust, its sole member

By: James P. Seery, Jr.
Its: Trustee

**LIMITED PARTNER:**

**HIGHLAND CLAIMANT TRUST**

By: James P. Seery, Jr.
Its: Trustee

*[Signature Page to Fifth Amended and Restated Agreement of Limited Partnership of Highland Capital Management, L.P.]*

9

000715

*Execution Version*

**Schedule A**

<div align="center">

**SCHEDULE OF PARTNERS**

**August 11, 2021**

</div>

**General Partner**

| Name | Address | Percentage Interest |
|------|---------|---------------------|
| HCMLP GP LLC | 100 Crescent Court, Suite 1850 Dallas, Texas 75201 | 1.00% |

**Limited Partners**

| Name | Address | Percentage Interest |
|------|---------|---------------------|
| Highland Claimant Trust | 100 Crescent Court, Suite 1850 Dallas, Texas 75201 | 99.00% |

ActiveUS 184864835v.2

000716

*Execution Version*

**Schedule B**

### SCHEDULE OF OFFICERS

**August 11, 2021**

| <u>Name</u> | <u>Officer Title</u> |
|---|---|
| James P. Seery, Jr. | Chief Executive Officer |

*Schedule B*

*Execution Version*

**Exhibit I**

## REGULATORY ALLOCATIONS

(i)     Items of income or gain (computed in accordance with Section 6(a), including the adjustments therein) for any taxable period shall be allocated to the Partners in the manner and to the minimum extent required by the "minimum gain chargeback" provisions of Treasury Regulation Section 1.704-2(f) and Treasury Regulation Section 1.704-2(i)(4).

(ii)     All "nonrecourse deductions" (as defined in Treasury Regulation Section 1.704-2(b)(1)) of the Partnership for any year shall be allocated to the Partners in accordance with their respective Percentage Interests; provided, however, that nonrecourse deductions attributable to "partner nonrecourse debt" (as defined in Treasury Regulation Section 1.704-2(b)(4)) shall be allocated to the Partners in accordance with the provisions of Treasury Regulation Section 1.704-2(i)(1).

(iii)     Items of income or gain (computed in accordance with Section 6(a), including the adjustments therein) for any taxable period shall be allocated to the Partners in the manner and to the extent required by the "qualified income offset" provisions of Treasury Regulation Section 1.704-1(b)(2)(ii)(*d*).

(iv)     In no event shall Loss of the Partnership be allocated to a Partner if such allocation would cause or increase a negative balance in such Partner's Adjusted Capital Account (determined for purposes of this Exhibit I only, by increasing the Partner's Adjusted Capital Account balance by the amount the Partner is obligated to restore to the Partnership pursuant to Treasury Regulation Section 1.704-1(b)(2)(ii)(*c*) and decreasing it by the amounts specified in Treasury Regulation Sections 1.704-1(b)(2)(ii)(*d*)(*4*), (*5*) and (*6*)).

(v)     For tax purposes, except as otherwise provided herein or as required by Code Section 704, all items of income, gain, loss, deduction or credit shall be allocated to the Partners in the same manner as are Income and Loss; provided, however, that if the Book Value of any property of the Partnership differs from its adjusted basis for tax purposes, then items of income, gain, loss, deduction or credit related to such property for tax purposes shall be allocated among the Partners so as to take account of the variation between the adjusted basis of the property for tax purposes and its Book Value in the manner provided for under Code Section 704(c).

(vi)     For purposes hereof, the following terms have the meanings set forth below:

"***Adjusted Capital Account***" means, for each Partner, such Partner's capital account balance increased by such Partner's share of "minimum gain" and of "partner nonrecourse debt minimum gain" (as determined pursuant to Treasury Regulation Sections 1.704-2(g) and 1.704-2(i)(5), respectively).

"***Book Value***" means, with respect to any asset, the asset's adjusted basis for U.S. federal income tax purposes; provided, however, that (i) the initial Book Value of any asset contributed to the Partnership shall be adjusted to equal its fair market value as determined by the General Partner at the time of its contribution, and (ii) the Book Values of all assets held by the Partnership shall be adjusted to equal their respective fair market values as determined by the General Partner (taking Code Section 7701(g) into account) upon an election by the Partnership to revalue its property in accordance with Regulation Section 1.704-1(b)(2)(iv)(*f*) and upon liquidation of the Partnership.  The Book Value of any asset whose Book Value was adjusted pursuant to the preceding sentence shall thereafter be adjusted in accordance with the provisions of Regulation Section 1.704-1(b)(2)(iv)(*g*).

*Exhibit I*

Tab 3

B 2100A (Form 2100A) (12/15)

# UNITED STATES BANKRUPTCY COURT

Northern District of Texas

In re ___Highland Capital Management LP___ ,          Case No. ___19-34054___

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

___NexPoint Advisors, L.P.___
Name of Transferee

___Hunter Covitz___
Name of Transferor

Name and Address where notices to transferee should be sent:
Davor Rukavina
Munsch Hardt Kopf & Harr P.C.
500 N. Akard St., Ste. 3800
Dallas, TX 75201

Court Claim # (if known): ___186___
Amount of Claim: ___at least $250,000___
Date Claim Filed: ___5/26/2021___

Phone: ___214-855-7500___
Last Four Digits of Acct #: _____

Phone: ___212-294-6700/391___
Last Four Digits of Acct. #: _____

Name and Address where transferee payments should be sent (if different from above):

Phone: _____
Last Four Digits of Acct #:_____

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:_____          Date: ___1-3-2022___
Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

000719

Tab 4

Davor Rukavina, Esq.
Tex. Bar No. 24030781
Julian P. Vasek, Esq.
Tex. Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard St., Ste. 3800
Dallas, TX 75201
214-855-7500

COUNSEL FOR NEXPOINT ADVISORS, L.P.

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

</div>

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | Chapter 11 |
| | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor | § | |

<div align="center">

**NEXPOINT ADVISORS, L.P.'S RESPONSE TO LITIGATION TRUSTEE'S**
**OBJECTION TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)**

</div>

COMES NOW NexPoint Advisors, L.P. ("NexPoint"), as successor-in-interest to Hunter Covitz ("Mr. Covitz"), a creditor and party in interest in the above captioned bankruptcy case (the "Bankruptcy Case") of Highland Capital Management, L.P., and responds to the *Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* (Dkt. No. 3002, the "Objection") filed by Marc S. Kirschner (the "Litigation Trustee"), in support of which NexPoint would respectfully show as follows:

1.      As otherwise evidenced on the docket of the Bankruptcy Case, Proof of Claim No. 186 filed by Mr. Covitz on May 26, 2020 (the "Claim") has been assigned to NexPoint by Mr. Covitz. *See* Dkt. No. 3146.

2.      Under the Local Rules, no written response to the Objection is necessary. L.B.R. 9014-1(f). However, to date, the Litigation Trustee has not set the Objection for hearing.

---

NEXPOINT ADVISORS, L.P.'S RESPONSE TO LITIGATION TRUSTEE'S
OBJECTION TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)          Page **1** of 3

000720

3.      Accordingly, out of an abundance of caution, NexPoint files this response solely to indicate its opposition to the Objection and to give notice of its intent to conduct discovery pursuant to Fed. R. Bankr. P. 9014(c).  NexPoint does not waive the right to put on a complete defense to the Objection at any hearing thereon.

4.      NexPoint will serve its discovery requests promptly after filing this response and therefore requests that the Court set the Objection for hearing once a reasonable opportunity to conduct discovery has passed.

WHEREFORE, PREMISES CONSIDERED, NexPoint respectfully requests that, following a reasonable opportunity for discovery, in the event the Litigation Trustee is unable to overcome the *prima facie* validity of the Claim, the Court enter an order denying the Objection and providing NexPoint such other and further relief to which it is entitled.

RESPECTFULLY SUBMITTED this 3rd day of January, 2022.

MUNSCH HARDT KOPF & HARR P.C.

By:  /s/ *Julian P. Vasek*
Davor Rukavina, Esq.
Tex. Bar No. 24030781
Julian P. Vasek, Esq.
Tex. Bar No. 24070790
500 N. Akard St., Ste. 3800
Dallas, TX 75201
214-855-7500
drukavina@munsch.com
jvasek@munsch.com

COUNSEL FOR NEXPOINT ADVISORS, L.P.

NEXPOINT ADVISORS, L.P.'S RESPONSE TO LITIGATION TRUSTEE'S
OBJECTION TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)          Page **2** of 3

000721

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on the 3rd day of January, 2022, he caused true and correct copies of this document to be served electronically on all parties entitled to CM/ECF service in this Bankruptcy Case, including counsel for the Litigation Trustee, by electronically filing said document through the Court's CM/ECF system.

By:  /s/ *Julian P. Vasek*
       Julian P. Vasek, Esq.

NEXPOINT ADVISORS, L.P.'S RESPONSE TO LITIGATION TRUSTEE'S
OBJECTION TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)          Page **3** of 3
4853-3433-0120v.1 019717.00001

000722

Tab 5

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Susheel Kirpalani (admitted *pro hac vice*)
Deborah J. Newman (admitted *pro hac vice*)
Robert Loigman (admitted *pro hac vice*)
Benjamin I. Finestone (admitted *pro hac vice*)
Jordan Harap (admitted *pro hac vice*)
Alexandre J. Tschumi (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000

**SIDLEY AUSTIN LLP**
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

*Co-counsel for Marc S. Kirschner, as Litigation*
*Trustee of the Highland Litigation Sub-Trust*

## IN THE UNITED STATED BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) |  |
|  | ) |  |
|  | ) | **Docket Ref. No.  3002** |

### THE LITIGATION TRUSTEE'S REPLY TO
### NEXPOINT ADVISORS, L.P.'S RESPONSE TO LITIGATION TRUSTEE'S
### OBJECTION TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)

      Marc S. Kirschner (the "Litigation Trustee"), as Litigation Trustee of the Litigation Sub-

Trust established pursuant to the Fifth Amended Plan of Reorganization of Highland Capital

Management L.P. ("HCMLP" or the "Reorganized Debtor") [Docket No. 1808], through his

undersigned counsel, hereby files this *Reply to NexPoint Advisors, L.P.'s Response to Litigation*

*Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* (the "Reply").  For

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357).  The Reorganized Debtor is a Delaware limited partnership.  The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

000723

the reasons contained herein, the Litigation Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, disallowing Proof of Claim No. 186, filed by Hunter Covitz on May 26, 2020 (the "Claim") without a hearing.  In support of this Reply, the Litigation Trustee respectfully represents as follows:

1.     On November 9, 2021, the Litigation Trustee filed the *Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3002] (the "Objection").  The Objection provided that responses to the Objection were due no later than December 9, 2021 (the "Response Deadline") and that, if Mr. Covitz failed to file and serve a timely response by the Response Deadline, the Litigation Trustee could request an appropriate order from the Court requesting the disallowance of the Claim without further notice to Mr. Covitz. *See* Objection at 8-9.

2.      As of December 9, 2021, no answer, objection, or other responsive pleading to the Objection was received or filed by Mr. Covitz or any other party.

3.     On January 3, 2022, almost one month after the Response Deadline, NexPoint Advisors, L.P. ("NPA") filed the *Notice of Transfer for NexPoint Advisors, L.P. re: Hunter Covitz (Claim No. 186)* [Docket No. 3146], whereby Mr. Covitz purportedly transferred the Claim to NPA.  On that same day, NPA filed an untimely response to the Objection.  *See NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3147].

4.     Upon information and belief, Mr. Covitz assigned the Claim to NPA in an effort to confer standing on NPA to prosecute its multiple appeals of this Court's orders, and to object to matters that may be brought before this Court in the future.[2]  NPA's efforts are part and parcel of

---

[2] NPA requires Mr. Covitz's Claim to argue standing as it otherwise has no prepetition claims against HCMLP's estate.  NPA's proofs of claim, filed in 2020, were expunged [Docket Nos. 906, 1233], and NPA recently agreed to

a broader strategy in this case, perpetrated by Dondero and the entities he controls, to mire HCMLP in expensive and frivolous litigation.  To that end, on Wednesday, January 5, 2022, counsel to NPA served the Litigation Trustee with overbroad, burdensome discovery requests—including nineteen (19) categories of requests for production and twelve (12) interrogatories—notwithstanding the fact that Mr. Covitz's Claim fails to provide information that is sufficient to identify its amount or determine its validity.  *See* Objection ¶ 16.

5.      No timely response to the Objection was filed by the Response Deadline and as such, the Court need not indulge this latest effort to burden HCMLP and its fiduciaries with wasteful litigation.  Accordingly, the Litigation Trustee respectfully requests that the proposed order attached hereto as **Exhibit A** be entered at the Court's convenience without a hearing, disallowing the Claim with prejudice and granting such other and further relief as the Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

---

withdraw with prejudice the claims transferred to it by other former HCMLP employees in early 2021 [Docket No. 3160].

000725

Dated: January 7, 2022

Respectfully submitted,

SIDLEY AUSTIN LLP

*/s/ Paige Holden Montgomery*
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

-and-

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Susheel Kirpalani (admitted *pro hac vice*)
Deborah J. Newman (admitted *pro hac vice*)
Robert S. Loigman (admitted *pro hac vice*)
Benjamin I. Finestone (admitted *pro hac vice*)
Jordan Harap (admitted *pro hac vice*)
Alexander J. Tschumi (admitted *pro hac vice*)
51 Madison Avenue
Floor 22
New York, NY 10010
Telephone:  (212) 849-7000

*Counsel for the Litigation Trustee*

000726

## CERTIFICATE OF SERVICE

I, Paige Holden Montgomery, hereby certify that on this 7th day of January, 2022, a true and correct copy of the foregoing *Litigation Trustee's Reply to NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186),* was sent via electronic mail via the Court's ECF system to all parties authorized to receive electronic notice in this case.

*/s/ Paige Holden Montgomery*
Paige Holden Montgomery
SIDLEY AUSTIN LLP

*Counsel for the Litigation Trustee*

000727

## Exhibit A

000728

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, | ) | Case No. 19-34054-sgj11 |
| L.P.,[3] | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## ORDER SUSTAINING THE LITIGATION TRUSTEE'S OBJECTION
## TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)

Having considered *The Litigation Trustee's Objection to Proof of Claim Filed by Hunter*

*Covitz (Claim No. 186)* [Docket No. 3002] (the "Objection"), the *Litigation Trustee's Reply to*

---

[3] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357).  The Reorganized Debtor is a Delaware limited partnership.  The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

000729

*NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by*

*Hunter Covitz (Claim No. 186),* Proof of Claim No. 186, filed by Hunter Covitz on May 26, 2020

(the "<u>Claim</u>"), and any timely responses to the Objection, the Court finds that (i) notice of the

Objection was good and sufficient upon the particular circumstances and that no other or further

notice need be given; (ii) the Objection is a core proceeding under 28 U.S.C. § 157(b)(2); (iii) the

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and (iv) Covitz was

properly and timely served with the Objection.  Accordingly, the Court finds and concludes that

there is good and sufficient cause to grant the relief set forth in this Order.  It is therefore

**ORDERED:**

1. The Objection is **SUSTAINED** as set forth in further detail herein.

2. The Claim is **DISALLOWED** with prejudice and expunged in its entirety.

3. To the extent applicable, the official claims register in the Debtor's chapter 11 case
shall be modified in accordance with this Order.

4. The Litigation Trustee is authorized and empowered to take any actions necessary
to implement and effectuate the terms of this Order.

5. The Court shall retain jurisdiction over all matters arising from or related to the
interpretation and implementation of this Order.

<p align="center">###END OF ORDER###</p>

000730

Tab 6

| From: | Rognes, Chandler |
|---|---|
| To: | TXNB SGJ_Settings |
| Cc: | Montgomery, Paige; Hoffman, Juliana; Harap, Jordan (EXTERNAL @QUINNEMANUEL.COM ); Rukavina, Davor; Vasek, Julian |
| Subject: | In re Highland Capital Management, LP, No. 19-34054-sgj11, Docket No. 3167 |
| Date: | Tuesday, January 11, 2022 3:39:04 PM |

Ms. Ellison,

On Friday, the Litigation Trustee filed *The Litigation Trustee's Reply to NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3167] in the above-captioned case (the "Reply") in support of the *Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3002] (the "Claims Objection"), filed back in November 2021.  As indicated in the Reply, it is the Litigation Trustee's position that *NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3147], responding to the Claims Objection, was untimely, and we have requested that Judge Jernigan enter the proposed order attached to the Reply without a hearing.  Would the Court please advise as to whether a hearing is required for this matter?

Thanks,
Chandler

**CHANDLER M. ROGNES**
Associate

**SIDLEY AUSTIN LLP**
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
+1 214 969 3578
crognes@sidley.com
www.sidley.com

**SIDLEY**


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Exhibit B

000743

| From: | Rukavina, Davor |
|---|---|
| To: | Rognes, Chandler; TXNB SGJ _Settings |
| Cc: | Montgomery, Paige; Hoffman, Juliana; Harap, Jordan (EXTERNAL @QUINNEMANUEL.COM ); Vasek, Julian |
| Subject: | RE: In re Highland Capital Management, LP, No. 19-34054-sgj11, Docket No. 3167 |
| Date: | Tuesday, January 11, 2022 3:41:10 PM |

Ms. Ellison:

NexPoint would point out that there was no negative notice used in the claim objection and the Local Rules provide no deadline, so there was no deadline and no default. We would ask the Judge to not enter the default order for those reasons.

If the Judge requires briefing, we are happy to provide it. Or, if the Judge prefers a status conference, we are available.

Thank you,

**From:** Rognes, Chandler <crognes@sidley.com>
**Sent:** Tuesday, January 11, 2022 3:37 PM
**To:** TXNB SGJ _Settings <sgj_settings@txnb.uscourts.gov>
**Cc:** Montgomery, Paige <pmontgomery@sidley.com>; Hoffman, Juliana <jhoffman@sidley.com>; Harap, Jordan (EXTERNAL @QUINNEMANUEL.COM ) <jordanharap@quinnemanuel.com>; Rukavina, Davor <drukavina@munsch.com>; Vasek, Julian <jvasek@munsch.com>
**Subject:** In re Highland Capital Management, LP, No. 19-34054-sgj11, Docket No. 3167

Ms. Ellison,

On Friday, the Litigation Trustee filed *The Litigation Trustee's Reply to NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3167] in the above-captioned case (the "Reply") in support of the *Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3002] (the "Claims Objection"), filed back in November 2021. As indicated in the Reply, it is the Litigation Trustee's position that *NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3147], responding to the Claims Objection, was untimely, and we have requested that Judge Jernigan enter the proposed order attached to the Reply without a hearing. Would the Court please advise as to whether a hearing is required for this matter?

Thanks,
Chandler

**CHANDLER M. ROGNES**
Associate

**SIDLEY AUSTIN LLP**
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
+1 214 969 3578
crognes@sidley.com
www.sidley.com
**SIDLEY** 

**********************************************************************************

This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

**********************************************************************************



Exhibit C

000744

On Friday, the Litigation Trustee filed *The Litigation Trustee's Reply to NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3167] in the above-captioned case (the "Reply") in support of the *Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3002] (the "Claims Objection"), filed back in November 2021. As indicated in the Reply, it is the Litigation Trustee's position that *NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3147], responding to the Claims Objection, was untimely, and we have requested that Judge Jernigan enter the proposed order attached to the Reply without a hearing. Would the Court please advise as to whether a hearing is required for this matter?

Thanks,
Chandler

**CHANDLER M. ROGNES**
Associate

**SIDLEY AUSTIN LLP**
2021 McKinney Avenue
Suite 2000
Dallas, TX 75201
+1 214 969 3578
crognes@sidley.com
www.sidley.com



\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or
clicking on links.

Tab 7



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

**Signed January 13, 2022**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## ORDER SUSTAINING THE LITIGATION TRUSTEE'S OBJECTION
## TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)

Having considered *The Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3002] (the "Objection"), the *Litigation Trustee's Reply to*

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357). The Reorganized Debtor is a Delaware limited partnership. The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

000006

*NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3167]*,* Proof of Claim No. 186 filed by Hunter Covitz on May 26, 2020 (the "<u>Claim</u>"), and any timely responses to the Objection, the Court finds that (i) notice of the Objection was good and sufficient upon the particular circumstances and that no other or further notice need be given; (ii) the Objection is a core proceeding under 28 U.S.C. § 157(b)(2); (iii) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and (iv) Covitz was properly and timely served with the Objection. Accordingly, the Court finds and concludes that there is good and sufficient cause to grant the relief set forth in this Order. It is therefore **ORDERED:**

1. The Objection is **SUSTAINED** as set forth in further detail herein.

2. The Claim is **DISALLOWED** with prejudice and expunged in its entirety.

3. To the extent applicable, the official claims register in the Debtor's chapter 11 case shall be modified in accordance with this Order.

4. The Litigation Trustee[2] is authorized and empowered to take any actions necessary to implement and effectuate the terms of this Order.

5. The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

<div align="center">

###END OF ORDER###

</div>

---

[2] All capitalized terms used but not defined herein have the meanings given to them in the Objection.

Tab 8

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR NEXPOINT ADVISORS, L.P.

<div align="center">

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

</div>

|                                            |     |                          |
|--------------------------------------------|-----|--------------------------|
| In re:                                     | )   | Chapter 11               |
|                                            | )   |                          |
| HIGHLAND CAPITAL MANAGEMENT, L.P.          | )   | Case No. 19-34054-sgj11  |
|                                            | )   |                          |
| Debtor.                                    | )   |                          |
|                                            | )   |                          |
|                                            | )   |                          |

<div align="center">

**NOTICE OF APPEAL**

</div>

COMES NOW NexPoint Advisors, L.P., a creditor and party in interest in the above-captioned bankruptcy case (the "Bankruptcy Case"), and, pursuant to 28 U.S.C. § 158(a), hereby appeals to the United States District Court for the Northern District of Texas that certain *Order Sustaining the Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* (the "Order") entered by the Bankruptcy Court on January 13, 2022 at docket no. 3180 in the Bankruptcy Case.

A copy of the Order is attached hereto as Exhibit A.

The names of the parties to the Order, their roles in the appeal, and the contact information for their counsel are as follows:

1.    Appellants:

       NexPoint Advisors, L.P.

Attorneys:

Davor Rukavina
Julian P. Vasek
MUNSCH HARDT KOPF & HARR, P.C.
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75201-6659
Telephone: (214) 855-7587
Facsimile: (214) 855-7584
Email: drukavina@munsch.com
Email: jvasek@munsch.com

2.    Appellee:

Marc S. Kirschner, Litigation Trustee of the Litigation Sub-Trust

Attorneys:

Paige Holden Montgomery
Juliana L. Hoffman
SIDLEY AUSTIN LLP
2021 McKinney Avenue Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400
Email: pmontgomery@sidley.com
Email: jhoffman@sidley.com

Susheel Kirpalani
Deborah J. Newman
Robert Loigman
Benjamin I. Finestone
Jordan Harap
Alexandre J. Tschumi
QUINN EMANUEL URQUHART & SULLIVAN LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile: (212) 849-7100
Email: susheelkirpalani@quinnemanuel.com
Email: deborahnewman@quinnemanuel.com
Email: robertloigman@quinnemanuel.com
Email: benjaminfinestone@quinnemanuel.com
Email: jordanharap@quinnemanuel.com
Email: alexandretschumi@quinnemanuel.com

---

RESPECTFULLY SUBMITTED this 26th day of January, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/  *Julian P. Vasek*
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    500 N. Akard Street, Suite 3800
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR NEXPOINT ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on January 26, 2022, true and correct copies of this document, including any exhibit(s), were electronically served via the Court's CM/ECF system on all parties entitled to such notice, including the following counsel for the Appellee:

- Paige Holden Montgomery: pmontgomery@sidley.com
- Juliana L. Hoffman: jhoffman@sidley.com
- Susheel Kirpalani: susheelkirpalani@quinnemanuel.com

By: /s/ *Julian P. Vasek*
    Julian P. Vasek, Esq.

Case 19-34054-sgj11 Doc 3180-1 Filed 01/13/22 Entered 01/13/22 17:37:38 Page 1 of 22
Docket #3180 Date Filed: 01/13/2022
Case 3:22-cv-00335-L Document 5-1 Filed 04/13/22 Page 102 of 103 PageID 1495



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed January 13, 2022

**United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | ) | Case No. 19-34054-sgj11 |
| Debtor. | ) | |
| | ) | |
| | ) | |

### ORDER SUSTAINING THE LITIGATION TRUSTEE'S OBJECTION
### TO PROOF OF CLAIM FILED BY HUNTER COVITZ (CLAIM NO. 186)

Having considered *The Litigation Trustee's Objection to Proof of Claim Filed by Hunter*

*Covitz (Claim No. 186)* [Docket No. 3002] (the "Objection"), the *Litigation Trustee's Reply to*

---

[1] The last four digits of the Reorganized Debtor's taxpayer identification number are (8357). The Reorganized Debtor is a Delaware limited partnership. The Reorganized Debtor's headquarters and service address are 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Exhibit A

1934054220113000000000008

000004

*NexPoint Advisors, L.P.'s Response to Litigation Trustee's Objection to Proof of Claim Filed by Hunter Covitz (Claim No. 186)* [Docket No. 3167], Proof of Claim No. 186 filed by Hunter Covitz on May 26, 2020 (the "<u>Claim</u>"), and any timely responses to the Objection, the Court finds that (i) notice of the Objection was good and sufficient upon the particular circumstances and that no other or further notice need be given; (ii) the Objection is a core proceeding under 28 U.S.C. § 157(b)(2); (iii) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and (iv) Covitz was properly and timely served with the Objection.  Accordingly, the Court finds and concludes that there is good and sufficient cause to grant the relief set forth in this Order.  It is therefore **ORDERED:**

1.      The Objection is **SUSTAINED** as set forth in further detail herein.

2.      The Claim is **DISALLOWED** with prejudice and expunged in its entirety.

3.      To the extent applicable, the official claims register in the Debtor's chapter 11 case shall be modified in accordance with this Order.

4.      The Litigation Trustee[2] is authorized and empowered to take any actions necessary to implement and effectuate the terms of this Order.

5.      The Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

<p align="center">###END OF ORDER###</p>

---

[2] All capitalized terms used but not defined herein have the meanings given to them in the Objection.

<p align="center">2</p>

000005